STATE of Indiana ex rel. Mary and Wendell VAN BUSKIRK on behalf of themselves and all others similarly situated, Appellants (Plaintiffs Below),

v.

WAYNE TOWNSHIP, MARION COUNTY, Indiana and Richard Hadley, Individually and in his capacity as Wayne Township Trustee, and Elsie Norman, Individually and in her capacity as Poor Relief Supervisor, Appellees (Defendants Below).

No. 2–1079A320.

Court of Appeals of Indiana, Fourth District.

March 23, 1981.

Peter L. Cassady, Scott Severns and Marie A. Failinger, Legal Services Organization of Indiana, Inc., Indianapolis, for appellants.

A. David Stippler, Fulmer, Byrum, Gagnon & Diehl, Indianapolis, for appellees.

YOUNG, Presiding Judge.

Plaintiffs Mary & Wendell Van Buskirk, on their own behalf and on behalf of all others similarly situated, appeal the grant of summary judgment in favor of defendant Wayne Township Trustee. At trial, plaintiffs sought, on behalf of themselves, an order compelling the defendant to provide them with shelter, food and household assistance which they had been denied. On behalf of themselves and all other applicants for poor relief who had been or would be denied relief because of various practices and policies of the Wayne Township Trustee,[1] they sought declarative and injunctive relief. The trial court granted summary judgment on all issues in favor of the Trustee. We reverse finding that the law was incorrectly applied to some issues and that genuine issues of material fact preclude summary judgment on other issues.

The relevant facts reveal that on January 10, 1978, Mrs. Van Buskirk applied for poor relief from the Wayne Township Trustee, requesting assistance to provide food, shelter, utilities and clothing for her family. The Van Buskirks resided in Wayne Township with their four children in a home they were purchasing on land sale contract from Colonial Discount Corporation. The contract was executed in July, 1977 with a down payment of $300.00, purchase price being $9,500.00. Their monthly payment was $100.75. Both Mr. & Mrs. Van Buskirk had health problems which interfered with their ability to work. Because of health problems and because their employer, Manpower, Inc., a supplier of temporary workers to industry, had called them to work only a few times since December 1, 1977, they were unable to make the December or January contract payment. Mr. and Mrs. Van Buskirk had earned approximately $260.00 during this two month period. Their only other means of subsistence during this period was a $71.00 Christmas gift from the children's school and some small contributions from relatives. The Trustee granted Mrs. Van Buskirk a $41.00 food order, an $8.00 household order and $120.00 clothing assistance order, but denied her request for utilities or shelter assistance. Mrs. Van Buskirk was informed that her request for shelter assistance was denied because she was purchasing her shelter. The Trustee's policy was to provide shelter assistance only to those who were renting their shelter.

On January 13, 1978, the Trustee sent notice to the Van Buskirks terminating all further assistance because they did not meet income requirements and had failed to disclose all income for the last 30 days. Mrs. Van Buskirk did not report receipt of the $71.00 Christmas gift and there is dispute regarding whether Mrs. Van Buskirk failed to report some Manpower income earned by her husband in December.

The Van Buskirks appealed the Trustee's denial of aid to the poor relief hearing officer of Indianapolis. The Hearing Officer found the Van Buskirks, two months behind in their land sale contract payments, had not been ordered to vacate. Therefore, the hearing officer concluded that, although there was no apparent basis for the trus-

---

1. The trial court certified two classes of plaintiffs pursuant to T.R. 23(B)(3). The first class consisted of all persons who have applied to the Wayne Township Trustee for any kind of relief but were denied from April 1, 1977 to June 21, 1978. The second class consisted of all people under the poverty level of the U.S. Census Bureau who either have in the past or will in the future apply for poor relief from the Wayne Township Trustee and be denied.

tee's "rent-only" shelter policy, the Trustee was justified in denying the Van Buskirks shelter assistance because they had failed to show sufficient immediacy to warrant such aid.

The Van Buskirks then filed this action seeking the poor relief which they had been denied and challenging on behalf of the certified class of Wayne Township poor the manner in which the Trustee administered the poor relief program. Colonial Discount Corporation, the contract seller of the Van Buskirk home, sued the Van Buskirks for ejectment and cancellation of the contract. That case was consolidated with the present one and the trial court, on June 21, 1979, granted Colonial's request for possession. That action is not herein appealed.

The Van Buskirks argue the following issues:

1. That summary judgment should have been granted for them on the issue of whether the Trustee's policy of providing shelter assistance to renters only violates:

(a) the Indiana poor relief statute IC 12–2–1–1 et seq. because it arbitrarily and without statutory authorization redefines and limits the meaning of the word shelter as used in IC 12–2–1–10(b).

(b) the Indiana Constitution Article 1, §§ 12 and 23 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in its dissimilar treatment of two classes of poor relief applicants, the poor who are renting and the poor who are purchasing shelter.

2. That summary judgment was improperly granted on the issue of whether the Trustee's poor relief eligibility standards are calculated to meet the basic needs of all poor people in Wayne Township.

3. That summary judgment should have been granted for them on the issue of whether the Trustee's poor relief eligibility standards violate:

(a) the Indiana Poor Relief Laws, IC 12–2–1–1 et. seq. because they fail to implement the purpose and express provisions of the statute,

(b) the due process rights of poor people to the fair and predictable administration of poor relief because the standards are incomplete and indefinite and contain provisions contrary to the statute.

4. That summary judgment was improperly granted on the issue of the eligibility and entitlement of the Van Buskirks personally to the poor relief, (shelter, food and household assistance) which they were denied.

Motions for partial summary judgment were filed by both parties which covered all but the last issue. The trial judge granted the summary judgment requested by the Trustee on the first three issues and *sua sponte* entered summary judgment for the Trustee on the fourth issue.

TR. 56 provides that the judgment sought shall be rendered if the pleadings, answers to interrogatories and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Evidentiary matters are examined in the light most favorable to the non-moving party. *Tekulve v. Turner*, (1979) Ind.App., 391 N.E.2d 673, 675. On appeal from the grant of a summary judgment, we must determine whether there are issues of material fact and, if none, whether the trial court correctly applied the law. *Johnson v. Wabash County*, (1979) Ind.App., 391 N.E.2d 1139, 1142.

The procedure established for review of township trustee decisions provides for appeal to the board of county commissioners in the county in which the township is located, IC 12–2–1–18.[2] The board of commissioner's poor relief decision is then appealable to the county circuit court, IC 17–1–14–24 to 30. The statute provides that the appeal shall be heard as an original

---

2. It should be noted that in Marion County due to Uni-Gov, the mayor's office rather than the county board of commissioners reviews all trustee decisions. IC 18–4–4–7.

cause, IC 17–1–14–29. As an original cause, the factual findings of the board are not given the weight or accorded the presumption of validity which is usually given administrative factual findings. Rosenberg, *Overseeing the Poor: A Legal-Administrative Analysis of the Indiana Township Assistance System*, 6 Ind.L.Rev. 385, 393 (1973).

The Van Buskirks contend that the trial court erred in awarding summary judgment for the defendant Trustee rather than for them on the issue of whether the Trustee's shelter policy violates the poor relief statute IC 12–2–1–1 *et seq.*. The shelter policy disagreement centers around the meaning of IC 12–2–1–10(b):

> Public aid by an overseer of the poor may include and shall be extended only when the personal effort of the applicant fails to provide one or more of the following items: food, including prepared food, clothing, shelter, light, water, fuel for heating and cooking, household supplies which shall include first aid and medical supplies for minor injury and illness, household necessities which shall include basic and essential items of furniture and utensils, heating and cooking stoves, and transportation to seek and accept employment.

The trial court apparently based its decision upholding the Trustee's shelter policy on a combination of two reasons. Relying upon the "may" language of 12–2–1–10(b), that "[p]ublic aid *may* include and shall be extended only when the personal efforts of the applicant fails to provide one or more of the following items: food . . . clothing, shelter, . . .", it determined that the statute did not mandate the Trustee to provide qualified applicants any particular type of shelter aid. The statute, the court said, "merely requires a trustee to provide some type of shelter to those . . . unable to obtain it." The court thus found the Trustee had discretionary authority to provide shel-

ter in whatever way it chose, including its "rent payment only" shelter policy.

Secondly, the trial court, relying upon the City of Indianapolis' Hearing Officer's finding that the Van Buskirks had "failed to show sufficient immediacy to warrant emergency aid for housing" due to the apparent fact that their conditional vendor had not threatened or begun eviction proceedings, concluded that the Van Burkirks were ineligible for shelter relief under IC 12–2–1–10(b) because they had been able to provide themselves with shelter: "public aid may include and *shall be extended only when the personal effort of the applicant fails to provide* . . .."

The meaning of the language found in IC 12–2–1–10(b) is unclear and has never been construed by the Indiana courts.[3] The function of the word "shall' is unclear as is the phrase "may include", *see e. g.* Rosenberg, *Overseeing the Poor*, 6 Ind.L.Rev. at 389. It is unclear whether the Trustee is *authorized* by the "may include" language or *required* by the "shall" language of IC 12–2–1–10(b) to provide the enumerated goods and services if he finds that the personal effort of the applicant has failed to provide them. Words and phrases in a single section of a statute must be construed together with other parts of the same section and with the statute as a whole; they must be construed in harmony with the legislative intent so that the spirit and the purpose of the statute is carried out. *Indiana State Highway Comm'n v. White,* (1973) 259 Ind. 690, 291 N.E.2d 550. The poor relief statute requires the Trustee, who is the overseer of the poor, to "have the oversight and care of all poor persons in his township so long as they remain in a charge, and . . ., see that they are properly relieved and taken care of in the manner required by law . . .." IC 12–2–1–6 (1971). The purpose of the legislature in passing IC 12–2–1–1 et seq. is stated in IC 12–2–1–34:

---

**3.** Indeed, the federal District Court Judge for the Northern District of Indiana abstained from consideration of the constitutionality of the Indiana statute if it in fact permits the distinction between renters and purchasers in providing shelter assistance until an Indiana court had opportunity to construe the meaning of the term "shelter" as used in the poor relief statutes. *Hopson v. Schilling,* (N.D.Ind.1976) 418 F.Supp. 1223.

The purpose of this act [12–1–1–1—12–2–1–39] is to provide necessary and prompt relief to the citizens and residents of this state, and this act shall be liberally construed in order that its purposes may be accomplished as equitably and expeditiously as possible. ..."

 Construing the poor relief laws as a whole, IC 12–2–1–1 et. seq., it is clear that the legislature extended to the Trustee discretion in the administration of poor relief assistance as regards the nature and extent of the relief to be afforded given the particular circumstances of the individual applicant. However, the legislature limited that discretion when it directed the Trustee to provide to the poor all necessary relief in the most equitable and expedient method possible. We conclude IC 12–2–1–10(b) further limits the Trustee's discretion, requiring him to provide certain enumerated types of relief if he finds that the applicant has been unable to provide them for himself. Because the words "may" and "shall" are inextricably linked, IC 12–2–1–10(b) *requires* the Trustee as overseer of the poor to include the enumerated items as forms of relief which the Trustee is *required* to extend only when he finds the personal efforts of the applicant have failed to provide the same.

What type or manner of shelter aid is to be provided by the Trustee must next be determined. The Trustee argues and the trial court found that the Trustee has broad discretion to determine what type of shelter aid to provide and "so long as the Trustee provides some shelter to those unable to provide it," he has complied with the statute. Thus, the trial court found the classification for shelter assistance, rent payments but no mortgage or land sale payments, an allowable classification. The trial court apparently found the distinction between renters and purchasers to be a reasonable construction of the meaning of shelter, observing that the statute did not

reveal "an express intent by the Legislature to maintain an individual applicant's proprietary interest in real estate ...."

It is easy to agree with the trial court's last statement that an express intent to maintain an applicant's proprietary interest is not clearly expressed in the statute; it is more difficult, however, to agree that the statute authorizes or even allows the Trustee's blanket policy of providing shelter assistance only to those renting their shelter.

 The Van Buskirks argue that the statutory term shelter is plain and unambiguous, requiring no construction or definition. Shelter is commonly interpreted to include all types of living arrangements, houses, apartments, etc. whether rented or purchased. It follows they argue, that had the legislature in its use of the term "shelter" intended to narrow its ordinary meaning it would have done so in plain language. We agree. In construing a statute, the words used are to be given their usual and ordinary meaning so that the statute's provisions are not unnecessarily narrowed or emasculated. *Evansville Vanderburgh School Corp. v. Roberts,* (1979) Ind.App., 395 N.E.2d 291, 294. Indeed, the legislature showed its ability to be quite specific when it wanted to be: transportation *to seek and accept employment,* medical supplies *for minor injury and illness.* The Van Buskirks' statutory argument that shelter includes purchased homes is furthered by reference to the statute's design, its nature and the consequences that flow from the various interpretations. The Van Buskirks argue that refusal to make mortgage and land sale payments to eligible poor people defeats the "design" and "nature" of the statute by forcing the home purchasing poor to first become shelterless before aid is obtainable.[4] Additionally the financial cost of obtaining alternate shelter in the event the applicant loses his house through foreclosure or forfeiture action will often be great-

---

4. The Trustee, in answer to interrogatories stated that shelter assistance was never provided to any non-rental applicant. At oral argument, this policy was confirmed in statements made by counsel for the Trustee. The Trustee's

counsel stated that only *after eviction* would the Trustee assist with shelter payments. The Trustee will then provide temporary shelter for those dispossessed at the Salvation Army until they are able to locate a rental unit.

er than the mortgage or contract payment assistance requested. They argue that the legislature contemplated that the Trustee provide aid that constitutes the most economical and practical method of relieving the applicant.

The flat refusal of the Trustee to evaluate the need of a person for shelter assistance merely because he is buying his home is an abuse of discretion. It is an unreasonable and unauthorized refusal by the Trustee to apply his discretion and determine the necessity of assistance under the particular circumstances in which it is sought. Cf. *Friend v. Silverman*, (Wisc.Cir. Ct.1974) C.C.H. Poverty Law Report ¶ 19,-646 (flat refusal to consider eligibility for general assistance violated statutory duty to consider reasonableness and necessity of assistance under the circumstances).

Moreover, it is difficult to conclude that the Trustee could automatically and conclusively assume that persons living in shelter they are purchasing are not in fact in need of general assistance to secure housing for themselves. The Trustee's policy operated by use of an irrebuttable presumption that people purchasing shelter could financially provide themselves with shelter. While that factual presumption might be true for some general assistance recipients, it was not true for the Van Buskirks in the lawsuit herein.[5] Cf. *Soave v. Milliken*, (W.D.Mich.1980) 497 F.Supp. 254. (General assistance shelter policy which denied shelter assistance to persons living within household of another invalid because creating irrebuttable presumption that those persons were not in need of shelter.) Certainly, the Trustee, in exercising his discre-

tion, should consider, among other things, the marketability of and the applicant's equity in the property, the applicant's age, health and social situation, including the probable duration of dependency in deciding whether to permit conservation of the applicant's property. See e. g. *Stallone v. Wyman*, (1969) 61 Misc.2d 416, 306 N.Y.S.2d 205. It is merely the automatic policy of denying shelter assistance to home purchasers that is contrary to the statute.

The Trustee argues and the trial court found that persons purchasing shelter are able to provide themselves with shelter within the meaning of IC 12–2–1–10(b).[6] The Trustee states that if and when a person loses his home and obtains a rented apartment, the Trustee will assist him with shelter payments. No convincing rationale however has been offered for forcing otherwise eligible general assistance recipients out of their homes into rental units. Indeed, a construction of IC 12–2–1–10(b) which produces such a result conflicts with the purpose of the poor relief laws: to provide *necessary* and *prompt* relief to the citizens and residents of this state. Further, there are important societal values which the legislature sought to recognize and protect by providing public assistance. Maintaining the personal dignity and stability of persons on the edge of poverty serves not only their personal interests, but the interests of the society in which they live.

We therefore conclude that actual evictions may not be a condition for eligibility. We do not decide, however, when an applicant has failed to provide himself with shelter within the meaning of IC 12–2–1–10(b). Such determination is unnecessary

---

**5.** Under the presumption utilized, it did not matter that the Van Buskirks had no equity in their property. The estimated value of the property at the time suit for ejectment was filed was $7,500.00, the balance on the contract was stated to be $9,500.00. Thus the Van Buskirks had no equity in their property.

**6.** The Trustee argues that his shelter policy conserves township monies for those who have *no* shelter at the time they apply for relief, yet he also states that it is not his policy to require an applicant to first lose shelter completely,

whether in a rent or purchase situation, before providing shelter aid. It appears that he does require loss of shelter by those purchasing but not by those renting shelter.

Additionally, the Trustee argues that he is only required to provide shelter assistance to those needing temporary emergency relief—i. e. persons without shelter, a basic necessity of life. However, the statute conditions eligibility on the *need*—not the *emergency* nature of the need of the applicant. Additionally IC 12–2–1–10(b) is not limited to temporary aid.

to our resolution of the validity of the Trustee's rent-only shelter policy, a policy where aid is refused all land sale contract purchasers without regard to the immediacy of their need for assistance. Whether the actual threat of eviction, financial inability to meet one's housing obligation (i. e.—delinquency) or some other set of facts is required we leave for development and resolution by the trial court when it determines the Van Buskirks' eligibility for shelter relief.[7]

■ In conclusion, we hold that the Trustee's rent-only shelter policy violates the poor relief statutes. While the Trustee in the exercise of his discretion is permitted to consider various factors, such as the value and marketability of the property, the applicant's equity in the property, the applicant's age, health and social situation, etc. in determining eligibility for shelter assistance, he is not permitted to automatically refuse aid to those purchasing shelter. Rather, he must provide aid in whatever form is necessary to provide shelter or prevent the loss of shelter so long as such aid constitutes the most economical and practical method of relieving the applicant.[8]

The Van Buskirks also contend that the Trustee's shelter policy denies those persons purchasing their shelter the equal protection of the laws. Having found the shelter policy violative of the Indiana poor relief statutes, we do not reach this constitutional issue.

We next address the Van Buskirks' challenge to the Trustee's poor relief eligibility standards. The legislature, in Section 6 of Acts 1977, Public Law 143, specifically required each Trustee to adopt written standards governing the administration of poor relief. The Wayne Township Trustee had adopted uniform standards of eligibility when the Van Buskirks applied for aid on January 10, 1978. Public Law 143 expired, as did the Trustee's standards on April 15, 1978. On April 16, 1978 the Trustee adopted revised standards of eligibility. In *Hopson v. Schilling*, (N.D.Ind.1978 Civ. No. L–75–30) the federal district court found the Indiana poor relief laws unconstitutional in their failure to require each Trustee to administer poor relief pursuant to public written standards. Those standards, the court held, must cover no less than each of the following: guidelines to financial eligibility for poor relief, including maximum income usually allowed; a statement of all non-financial conditions of eligibility; a statement of the needs which will normally be met if an applicant is eligible; and a description of the procedures to be followed by the applicant to obtain relief. The Wayne Township Trustee, as a member of the defendant class was bound by the district court order.

Both sets of eligibility standards were found by the trial court to meet the minimum requirements of law, providing a complete set of written standards reasonably calculated to enable the Trustee to meet the basic needs of the poor. Thus, the trial court found that the standards both comported with due process and effectuated the commands of the poor relief statutes.[9]

7. Both the trial court and the Trustee place weight upon the foreclosure rights given land sale purchasers under *Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641. However, in a case like the present, where no equity exists, there are probably no foreclosure rights. Nonetheless, the Trustee argues that acts threatening eviction must first occur before a person would be eligible for shelter assistance. Given that tenants and land sale purchasers without substantial equity can be summarily dispossessed, it would seem that once a person is delinquent in payment, possible eviction would be threatened. Thus a person would be unable to provide himself with shelter thereby satisfying the statutory precondition to assistance when he is financially unable to pay for it and has exhausted all personal effort to do so.

8. We do not, in so holding, require that the Trustee pay the full amount of the contract or mortgage payment; rather the rent payment maximum would be all the Trustee was required to pay. Under the current policy, the Trustee will not provide shelter assistance to a needy home purchaser even if his contract payment is *less than* the rent maximum. Thus, the Trustee's policy is not the most economical method of relieving the applicant.

9. *Hopson v. Schilling* was an unpublished order and consent decree and, therefore, we do not

The Van Buskirks first argue that the Trustee's standards are not reasonably calculated to meet the needs of the poor because the income eligibility standards [10] are so low that many poor cannot qualify for assistance even though their personal efforts fail to provide them with the basic necessities listed in IC 12–2–1–10(b), and because the maximum assistance standards [11] are too low to assure that the poor are properly relieved and taken care of in the manner required by law, IC 12–2–1–6. The Van Buskirks argue they presented evidence creating a genuine issue of material fact as to whether the Trustee's standards enable him to effectuate the statutory directives.

■ Clearly, the legislature intended that the poor should receive necessary relief. The nature and extent of such relief are necessarily left in large part within the sound discretion of the Trustee. *Board of*

*Commissioners of Posey County v. Harlem*, (1886) 108 Ind. 164, 8 N.E. 913. In determining whether the eligibility and assistance standards are reasonable, a court must employ the abuse of discretion standard. Only if the standards can be said to be arbitrary and capricious, can a court invalidate them. The procedure followed for setting both the income eligibility and the benefit amounts would be arbitrary if made without reliance upon evidence reasonably related to the need for and cost of food, shelter, etc.[12] The Trustee, in answer to the Van Buskirks interrogatories, stated that the income standards were determined by the Marion County Trustees' Association in early 1977 in light of previous experience in dispensing of emergency poor relief assistance for residents of Marion County. The standards were not formulated, however, with reference to any national, state or local poverty income guidelines.[13] What

rely upon it for any propositions of law. We do note, however, that the Indiana poor relief statute still does not require each Trustee to administer poor relief pursuant to public written standards. Because Public Law 143 was in effect at the time the Van Buskirks applied for aid, and because the constitutionality of the statute in light of its failure to require standards has not been raised or briefed by the parties, we do not here decide this issue.

**10.** The Uniform Standards contain the following income eligibility guidelines:

| Persons in Household | Income Guidelines |
| --- | --- |
| 1 | $130 |
| 2 | 150 |
| 3 | 195 |
| 4 | 225 |
| 5 | 255 |
| 6 | 285 |
| 7 | 315 |
| 8 | 345 |
| Over 8 add $5 each | |

**11.** The Uniform Standards contain the following assistance guidelines:

If the Trustee determines an eligible applicant has any of the following immediate needs, the Trustee has the authority and will provide in the most economical and practical manner:

(a) Food and necessary household supplies shall be provided as follows: Whenever possible, food assistance will be given in the form of the Trustee paying for food stamps.

| Persons in Household | Food and Household Items |
| --- | --- |
| 1 | $20 – $4 |
| 2 | 28 – 5 |
| 3 | 32 – 6 |
| 4 | 34 – 6 |
| 5 | 36 – 7 |
| 6 | 40 – 7 |
| 7 | 41 – 8 |
| 8 | 42 – 8 |

Over 8 add $4 on food
Over 8 maximum $10 on household items

(b) Shelter. The Trustee shall provide aid in the form of rent payments to eligible applicants. Ninety Dollars ($90.00) per month shall be paid when utilities are separate. Beyond this situation, the Trustee can use his own individual discretion.

**12.** The New York Supreme Court in *Cuilla v. Lavine,* (N.Y.S.Ct. Feb. 8, 1978) CCH Poverty Law Report ¶ 25,820 invalidated new heat allowance schedules for AFDC recipients because there was no form of review or methodology of establishing heat fuel allowances. No outside experts were consulted; no field studies, surveys, or samplings of actual recipient data was taken. Thus, the determination was arbitrary because not reasonably related to the need for and cost of fuel.

**13.** In *Bronson v. Barbaro,* (N.Y.S.Ct.1971) CCH Poverty Law Report ¶ 1520.84 the court upheld a late setting procedure which involved a mail survey to recipients and a random sample of the agency's own records. However, numerous factors were considered by the agency includ-

methodology, if any, was utilized by the Trustees as well as the adequacy of that methodology is still at issue. Even giving great weight to the Trustee's experience and expertise, a genuine issue of material fact remains as to whether the standards are reasonably calculated to meet the needs of the poor.

The Van Buskirks next argue that summary judgment should have been granted them on the issue of whether the Trustee's standards deny poor relief applicants due process because they contain various clauses which violate the poor relief statutes. Those provisions will be examined in detail in the succeeding section. The argument is that to the extent the Standards refuse to provide aid the statute requires each Trustee provide and imposes eligibility conditions not required by statute, the standards arbitrarily and invidiously deny poor relief applicants due process. We delay resolution of this issue to first consider the alleged statutory violations.

They also assert that the Standards, by reserving unlimited discretion to the Trustee, take away all the protections which standards are designed to provide. The Standards provide that "The amount and length of assistance, when added to all other income and resources, shall be as determined by the Trustee." The meaning of this sentence is very unclear. It does indeed seem to vest standardless discretion in the Trustee. The problems with such standardless administration of poor relief have been recognized. In *Baker-Chaput v. Cammett*, (D.N.H.1976) 406 F.Supp. 1134, 1139, the court said:

> The standardless administration of general assistance places the hungry and poor at the administrator's whim and does little to foster the belief, so important in a democratic society, that justice has been served...

■ Additionally, the Standards must be reasonably complete in order to guard against "the existence of an absolute and

uncontrolled discretion in any agency of government... [which] would be an intolerable invitation to abuse..." *Holmes v. New York City Housing Authority*, (2d Cir. 1968) 398 F.2d 262, 265. Thus, we conclude that the Trustee must include in his standards the needs that will normally be met if an applicant is eligible, and the standards must, to satisfy due process, include all types of aid listed in the poor relief statutes. IC 12–2–1–1 *et seq.*

The Van Buskirks argue that summary judgment should have been granted for them on the issue of whether specific provisions of the Trustee's standards violate the poor relief statutes. These provisions will be discussed in seriatim.

■ The standards currently in use inform the applicant of the right to appeal an adverse determination by the Trustee. While a correct statement of the general statewide appeal process, which is made to the County Commissioners, it provides incorrect information regarding the appeal procedure in Marion County. Appeal is taken to the Marion County Poor Relief Hearing Officer appointed by the Mayor of Indianapolis pursuant to his UniGov authority. As the standards provide incorrect and inaccurate information, they are invalid. Similarly, the Standards, in listing when an applicant will be exempt from the work requirement state that an applicant "over 70 years of age" will not be required to work. IC 12–2–1–10(a)(2) sets the age limit at 65 years. In its brief, the Trustee states that the "70 years" standard is a "typographical error" which will be corrected forthwith. We assume the Trustee has done so.

■ The Standards do not provide an emergency telephone number which poor relief applicants can call if emergency assistance is required after the office is closed. Thus, the Van Buskirks assert, one of the statute's purposes, to provide emergency relief, is violated. (IC 12–2–1–8).

ing its own experiences, cost of living increases since the adoption of the previous schedule,

consumer price indexes, official conferences, and various surveys.

The poor relief laws do not require the posting of an emergency number. IC 17–4–12–1 only requires a Trustee to designate the dates the Trustee will be attending his business. It seems, therefore, that while posting an emergency number would better effectuate the purposes of the poor relief laws, such posting is not required by statute.

■ The Trustee states in his Standards that "emergency medical services shall be provided by referring eligible applicants to Wishard Memorial Hospital." The Van Buskirks argue that mere referral to Wishard does not satisfy IC 12–2–1–6 which requires the Trustee to ". . . in cases of necessity, promptly provide medical and surgical attendance for all the poor in his township who are not provided for in public institutions." Wishard Hospital provides medical and hospital assistance, and also medication and other medical supplies prescribed by a physician or surgeon in attendance. So long as "emergency" medical services does not mean anything other than "in cases of necessity," this referral policy satisfies the statute. The standards also state that the Trustee will provide "emergency funeral expenses as required by state law." IC 12–2–1–20 requires the Trustee to bury any person who dies in the township without money or other means necessary to defray funeral expenses. Again, no mention is made in the statute of "*emergency*" funeral expenses. The Trustee argues emergency means no money. Again, the Trustee seems to equate financial necessity with emergency. There seems no need for the use of the qualifying word "emergency" in either situation.

■ The Van Buskirks argue that the Trustee refuses to provide various services which the poor relief statutes require him to provide to eligible applicants. In response to interrogatories, the Trustee stated he did not provide transportation to seek and accept employment, IC 12–2–1–10(b). Given the statute's encouragement of work and ultimate financial independence, it is difficult to understand the Trustee's policy. Moreover, under IC 12–2–1–10(b), the Trustee is required to extend such assistance to eligible individuals unable to provide such transportation for themselves. The Trustee is also required to provide essential items of furniture and utensils, including heating and cooking stoves, IC 12–2–1–10(b), items specifically enumerated in the statute. The Trustee must also provide special medical diets. IC 12–2–1–6 mandates payment of special diets prescribed by physicians or surgeons. The Trustee requires a person to pay for special diets out of food allowance without increasing the amount of food assistance. Such policy conflicts with the mandate of IC 12–2–1–6.

■ The Trustee in defense argues that the Standards enable him to provide benefits beyond those specifically enumerated. While such policy may be laudatory, it does not alter the fact that, in answer to interrogatories, the Trustee stated that he does not provide any aid not specifically listed. The statute requires that the above mentioned types of aid be provided. Moreover, as the various mentioned statutes require the provision of certain types of assistance, due process requires that the Trustee list those types of aid.

■ Another issue involves the provision of utility and heating assistance. The Standards state that the Trustee will provide utility service and heating fuel assistance. In response to interrogatories, however, the Trustee stated that he did not pay utility reconnect fees. The Van Buskirks contend that this policy violates IC 12–2–1–6 and 12–2–1–8 to the extent that payment of reconnect fees is needed to eliminate immediate and pressing suffering. IC 12–2–1–6 states that ". . . [t]he township trustee may, in cases of necessity, authorize the payment . . . for water, gas and electric services, including the payment of delinquent bills for such services, when necessary to prevent their termination or to restore terminated service." IC 12–2–1–8 requires that "[w]henever an overseer shall ascertain by investigation that any poor person . . . . require(s) assistance, he shall furnish to them such temporary aid as may be necessary for the relief of immediate and

pressing suffering." Reading both statutory sections together, we conclude that the Trustee must, in cases of pressing hardship i. e., no heat in the winter etc., do whatever is necessary to restore terminated service, including payment of reconnect fees. _See also_ IC 12–2–1–10(b).

█ The Van Buskirks also argue the Standards make no provision for temporary relief as required by IC 12–2–1–8. The Trustee argues that he provides temporary relief and urges us to read paragraph VI of the Standards wherein it specifically provides that special emergencies, extraordinary expenses or other unusual conditions may be considered and aid to the eligible will immediately be provided. This practice satisfies IC 12–2–1–8.

█ The Standards state that under certain circumstances, "conditions of income, property ownership or expectations of funding at the time assistance is rendered," a promise to repay assistance will be a condition for the provision of relief. The Van Buskirks argue that conditioning the provision of assistance on the promise to repay is, under any circumstances, illegal because not authorized by statute. In support they cite _Hogan v. Pasek_, (N.D.Ind. Jan. 8, 1979) No. S76–17, CCH Poverty Law Report ¶ 28,208, in which it was held that the policy of conditioning poor relief assistance on an agreement to repay the value was unconstitutional under the due process clause of the Fourteenth Amendment insofar as the determinations were not based on public written standards. It was further stipulated that such practice violated state law, which mandated that certain types of relief be provided to needy persons and did not authorize recovery of assistance except from the estate of the recipient, IC 12–2–7–1. To the extent that an applicant is statutorily entitled to assistance, any requirement of repayment would violate the statute. However, a requirement of repayment may not violate the statute if the assistance is provided to an individual whose circumstances provide the means of repayment. However, to be valid, there must be written standards delimiting the circumstances in which such requirement will be imposed.

█ Finally, the Standards provide that any person in need may obtain assistance from the Township Trustee where he or she lives, but that a person in the Township solely to apply for assistance will be ineligible. The standard here does not create a residency requirement which acts as a condition precedent to township relief eligibility. Rather, it merely refuses aid to a poor relief applicant who comes into the township _solely_ to apply for relief. If he lives in the township, he is eligible.

The final issue raised by the Van Buskirks is whether summary judgment was properly granted on the issue of the eligibility of the Van Buskirks personally for shelter, food and household assistance.

█ To begin, neither party moved for summary judgment on this issue. Rather, the trial court _sua sponte_ entered judgment for the Trustee. Aside from the express provision for treating motions to dismiss or judgment on the pleadings as motions for summary judgment in TR 12(C), no other provisions in the Rules including TR 56, authorize such a practice. Thus it would seem a court should rarely enter summary judgment _sua sponte_ on an issue upon which no party has moved for summary judgment. The nonmovant must be afforded an opportunity to prepare and present his materials in opposition to the motion. 6 _Moore's Federal Practice_ paragraph 56.12 (2d ed. 1976). Although both parties here presented evidence, the focus was not upon this last issue. It is therefore unlikely that the Van Buskirks had a full and fair opportunity to meet the proposition that there was no genuine issue of material fact. _Cf. Domain Industries, Inc. v. Universal Pool Supply Inc._, (1980) Ind.App., 403 N.E.2d 889 (motion to dismiss could not be converted to motion for summary judgment).

Moreover, there are genuine issues of material fact as regards several issues in the denial of the Van Buskirks request for relief. The trial court found that the Trustee had met the Van Buskirks' original request for relief by provision of food, clothes and

household assistance, and had properly denied their shelter request. He found them ineligible for further relief for the reasons mentioned in the denial of aid letter.

■ The testimony and affidavit of Mrs. Van Buskirk disclose several contested material facts. The Trustee's office claims the Van Buskirks were denied further assistance because the family was over the income guidelines, and had failed to declare all income, especially Mr. Van Buskirk's. Mrs. Van Buskirk testified she reported all income except the $71.00 Christmas gift which she did not consider income that she had to report. From the application form itself it is unclear whether the $71.00 was income to be reported. It is unreasonable to permit a forfeiture of needed benefits because an applicant has failed to do something she has no way of knowing is required. *See e. g. Torres v. Department of Health and Rehabilitative Services*, (Fla. App.1980) 384 So.2d 978. In any event, the Trustee would have to show a willful withholding of relevant information before he would be entitled to discontinue assistance for non-cooperation. (See Standards II, paragraph II).[14]

Secondly, as regards the denial of shelter assistance, because this court holds the blanket policy of the Trustee violative of IC 12–2–1–10(b), a genuine issue of material fact exists as to the eligibility of the Van Buskirks to such assistance. Focus should be placed upon whether the Van Buskirks were able to provide themselves with shelter, the answer depending upon when a home purchaser is unable to provide themselves with shelter, i. e.—when they are in arrears, when they are threatened with eviction etc. Mrs. Van Buskirk testified that she had received several phone calls from Colonial Mortgage demanding payment. A letter dated February 3, 1978, was sent informing them their contract would be cancelled if payment was not made. Thus, whether they showed themselves unable to provide their shelter need is a question over which genuine issues remain.

Reversed and remanded for further proceeding consistent with this opinion.

CHIPMAN and MILLER, JJ., concur.

---

14. The Uniform Standards of Eligibility and Need, Paragraph II states the following:

> You are entitled to apply for poor relief assistance by filling out and signing an application/affidavit, Form PR. I; and swearing to your current financial situation. You will be required to cooperate with an investigation of your personal finances, family responsibility, and your eligibility to receive other types of assistance. This investigation may include a home visit. As soon as you reasonably can, you will be required to apply for any other assistance for which you may be eligible. *Willful giving of false information or withholding of relevant information will be considered non-cooperation.*