Jill **MACKEY**, Appellant–Plaintiff,

v.

Re the **ESTATE OF Meid Creighton MACKEY**, Appellee–Defendant.

No. 82A04–0602–CV–96.

Court of Appeals of Indiana.

Dec. 27, 2006.

---

Leslie C. Shively, Evansville, IN, Attorney for Appellant.

Mark E. Miller, Evansville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Jill Mackey ("Jill") appeals the trial court's judgment in favor of the Estate of Meid Creighton Mackey ("Estate"). Jill raises two issues, one of which we find dispositive and restate as whether the trial court erred by denying Jill's request for an evidentiary hearing.[1] We reverse and remand.

The relevant facts follow. On April 16, 1997, the trial court, pursuant to the parties' agreement, dissolved the marriage of Jill Mackey and Meid Mackey and entered an Agreed Final Decree of Dissolution of Marriage ("Decree") distributing the parties' assets as follows:

\* \* \* \* \*

1. [Providing that Meid would remain the sole owner of real estate and fixtures located on McCutchan Road in Evansville, Indiana, as described in Exhibit A but that Jill would be permitted to reside in the residence for sixty days.]

2. [Providing that Jill would be the sole owner of her personal items and certain household furnishings located in the McCutchan Road residence as described in Exhibit B.]

3. [Providing that Meid would be the sole owner of his personal items and certain household furnishings located in the McCutchan Road

1. The other issue raised by Jill is whether the trial court erred by denying her claim against the Estate for unpaid alimony pursuant to a dissolution decree.

residence as described in Exhibit C.]

4. [Providing that Jill would pay all bills incurred as a result of her provisional use of the marital residence.]

5. [Providing that Jill would be the sole owner of her jewelry.]

6. [Providing that Meid would pay a property settlement to Jill in the amount of $200,000.00.]

7. [Providing that the parties would file separate federal and state income tax returns.]

8. [Meid] shall pay alimony to [Jill] in the sum of Two Thousand Nine Hundred Sixteen and 67/100 Dollars ($2,916.67) per month payable over a period of one hundred forty-four (144) consecutive months unless earlier terminated by the death of [Jill]. The alimony paid by [Meid] shall be deducted from [Meid's] income under Section 215 of the Internal Revenue Code, and the alimony received by [Jill] shall be included in [Jill's] income under Section 71 of the Internal Revenue Code and that such alimony obligation shall be extinguished absolutely upon the death of [Jill]. [Meid's] first alimony payment to [Jill] shall commence on May 1, 1997, and continue on the first day of each month thereafter for the next one hundred forty-three (143) consecutive months unless earlier terminated by the death of [Jill]. Unless earlier terminated by the death of [Jill], [Jill] shall file a Satisfaction and Release when the alimony is paid in full, and [Jill] shall sign a partial Satisfaction and Release when requested as set forth in paragraph 9 herein.

9. [Meid's] obligation to pay alimony to [Jill] in one hundred forty-four (144) consecutive monthly installments commencing on May 1, 1997, unless earlier terminated by the death of [Jill], shall be secured by an interest in [Meid's] real estate commonly referred to as 15511 McCutchan Road, Evansville, IN 47711, and more particularly described in the copy of the Deed marked as Exhibit "A". [Meid's] obligation to pay alimony shall be a judgment lien thereon only to the extent that any installments of alimony were not paid when due. [Meid's] obligation to pay alimony shall *not* be a judgment lien or cloud on title on any real estate other than 15511 McCutchan Road and other real estate as specified hereafter. [Meid's] alimony obligation shall *not* encumber, or create a cloud on title to, any other real estate, stock, personal property, life insurance, retirement plans or other assets of [Meid] identified elsewhere in this Agreed Final Decree of Dissolution of Marriage or acquired hereafter by [Meid]. [Jill] shall execute a partial Satisfaction and Release evidencing [Meid's] alimony payment status should [Meid] sell the real estate at 15511 McCutchan Road, and [Meid] shall provide a new real estate parcel, upon which [Jill's] security interest shall transfer, and evidence that said real estate parcel is of equal or greater value as the real property at 15511 McCutchan Road. [Jill] shall sign any documents necessary to continue to transfer her security interest to a subsequent parcel of real estate of equal or greater value so long as [Meid] is current in payment of the monthly alimony

installment due [Jill]. Each monthly installment is a separate and distinct monetary obligation only due and payable as set forth herein. [Meid's] obligation to pay monthly alimony installments to [Jill] shall not be accelerated or modified in any manner.

10. [Providing that Meid would be the sole owner of bank accounts in his name as described in Exhibit D.]

11. [Providing that Jill would be the sole owner of bank accounts in her name.]

12. [Providing that Meid would be the sole owner of certain property described in Exhibit E].

13. [Providing that Meid would be the sole owner of his optometric practice and his interest in Vision Service Corporation d/b/a Eye–Mart.]

14. [Providing that each party would be the sole owner of all real and personal property acquired in their separate names after the dissolution petition was filed.]

15. [Providing that each party would pay half of the mediation fees.]

16. [Providing that each party would pay their own attorney fees.]

17. [Providing that each party would sign necessary documents.]

18. The provisions of this agreement and their legal effect have been fully explained to the respective parties by their respective counsel, and each party does hereby acknowledge that the agreement is fair and equitable; and each of the parties expressly certified that each of them have entered into this agreement upon mature consideration and upon the advise of separate counsel; that consent to the execution of this agreement has not been obtained by fraud, duress, intimidation, or undue influence of any person; and no representations of fact have been made by either party to the other except as herein expressly set forth; and that each party does hereby acknowledge that they have been furnished all information relating to the financial affairs of the other which has been requested by their counsel. Furthermore, except as specifically provided in this agreement, each of the parties does hereby release and forever discharge the other, his or her heirs, executors, personal representatives, administrators, assigns of and from any and all right, claim, demand or obligation arising out of or by virtue of the marital relation of the parties, including specifically but not by way of limitation, spousal torts and torts arising from spousal actions, violations of wiretap statutes, breach of marital contract, the respective dower rights, curtesy [sic], homestead rights, right of election regarding the estate of the other or to take against the will of the other, alimony, maintenance, rehabilitative maintenance, right of inheritance or distribution in the event of intestacy, right to act as executor, administrator or personal representative of the estate of the other, and all similar or related rights under the laws of any state or territory of the United States or any foreign country, as such laws exist or may hereafter be enacted or amended.

19. IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the parties' marriage is summarily dissolved and the parties' aforesaid agreements are

adopted as the Orders of this Court without further repetition.

Appellant's Appendix at 64–70.

Meid died on June 27, 2004. Jill filed a claim with the Estate in the amount of $169,166.86, representing the remaining payments of alimony pursuant to the Decree. Jill alleged that her claim was secured by a judgment lien against the McCutchan Road property. The Estate filed a petition to sell the McCutchan Road property free of any liens or encumbrances. The Estate alleged that "the subject of Jill Mackey's Claims is alimony not property settlement and her right to receive the payments terminated at the death of the decedent." Appellee's Appendix at 8.

Jill objected to the Estate's petition to sell the property and filed a "petition for determination of validity of claim." Appellant's Appendix at 4. The parties ultimately agreed that the property could be sold free and clear of Jill's alleged lien but that the lien would attach to the proceeds of the sale pending resolution of Jill's claim. The trial court scheduled a hearing and ordered the parties to present legal argument and case law. At the hearing, Jill's counsel argued that an evidentiary hearing was necessary to resolve the claim and submitted an affidavit from Jill regarding the Decree. Jill's affidavit provided that Meid and Jill were each to receive $780,000.00 as part of the division of the marital estate. Jill's portion was to consist of $165,000.00 in stock, $200,000.00 in cash, and $420,000.00 in an alimony judgment to be paid in 144 equal monthly installments. Further, Jill's affidavit provided that the $420,000.00 was "treated as alimony solely for tax purposes and it was never [her] intention that said funds were anything other than property settlement." Appellant's Appendix at 60. The Estate argued that the Decree was unambiguous, that no parole evidence should be considered, and

that the claim could be resolved without an evidentiary hearing. The Estate also argued that Jill's affidavit was barred by the Dead Man's Statute. The trial court allowed Jill to present the affidavit as evidence of why an evidentiary hearing should be held. After the hearing, the trial court entered an order disallowing Jill's claim and ordering that the real estate be sold free of all liens and encumbrances of Jill.

The issue is whether the trial court erred by denying Jill's request for an evidentiary hearing. In general, if a claim against an estate is disallowed, the claim "shall be set for trial in the probate court upon the petition of either party to the claim." Ind.Code § 29–1–14–10. Further, the trial of such claims "shall be conducted as in ordinary civil cases . . . ." Ind.Code § 29–1–14–13.

Here, although Jill filed a "petition for determination of validity of claim," the trial court set the hearing for legal argument only. Appellant's Appendix at 4. At the hearing, the Estate argued that Jill's claim could be determined solely based upon the four corners of the Decree, while Jill argued that an evidentiary hearing was necessary. By disallowing Jill's claim, the trial court in effect found that the Decree was unambiguous and granted summary judgment to the Estate even though neither party had filed a motion for summary judgment. This court has held that "[n]o provision of Trial Rule 56(C) authorizes the entry of summary judgment sua sponte" and "the practice should be used only rarely and with caution." *Jones v. Berlove*, 490 N.E.2d 393, 395 (Ind.Ct.App. 1986) (citing *State ex rel. Van Buskirk v. Wayne Township*, 418 N.E.2d 234, 247 (Ind.Ct.App.1981)). "The paramount consideration is whether the party against whom summary judgment has been entered had notice and an adequate opportunity to prepare and present materials in

opposition." *Id.* Thus, the question here is whether Jill had notice and an adequate opportunity to prepare and present evidence.

Jill argued that the "alimony" provisions in the Decree survived Meid's death and that the Estate was liable for the unpaid alimony. In *Hicks v. Fielman,* 421 N.E.2d 716, 720 (Ind.Ct.App.1981), we made a distinction between "alimony in gross," which is in the nature of a property settlement paid in fixed monthly installments, and "periodic alimony," which is in the nature of maintenance. We observed that: "Unless an agreement or decree calling for maintenance clearly says otherwise, maintenance payments can not accrue after the death of the person liable for them." *Hicks,* 421 N.E.2d at 720. However, "an award of alimony in gross makes the party in whose favor the judgment was made the other's creditor, and she may recover against her former spouse's estate." *Id.* at 721.

 Various factors are to be considered in determining whether a clause is one for maintenance or part of a property settlement. *In re Marriage of Buntin,* 496 N.E.2d 1351, 1353–1354 (Ind.Ct.App. 1986), *reh'g denied, trans. denied.* The factors indicating maintenance are: (1) the designation as maintenance; (2) provisions terminating the payments upon the death of either party; (3) payments made from future income; (4) provisions for termination upon remarriage; (5) provisions calling for modification based upon future events; (6) and payments for an indefinite period of time. Id. at 1354. On the other hand, property settlements are indicated when: (1) the payments are for a sum certain payable over a definite period of time; (2) there are no provisions for modification based on future events; (3) the obligation to make payments survives the death of the parties; (4) the provisions call for interest; and (5) the award does not

exceed the value of the marital assets at the time of dissolution. *Id.; see also Brinkmann v. Brinkmann,* 772 N.E.2d 441, 445 (Ind.Ct.App.2002).

 According to the Estate, an evidentiary hearing was unnecessary because a reading of the Decree reveals that most of these factors favor a determination that the payments were maintenance not a property settlement. The Estate argues that this matter can be determined from the four corners of the Decree and that extrinsic evidence is unnecessary. We agree that when a contract is determined to be unambiguous, the intent of the parties will be determined from the four corners of the document and extrinsic evidence will not be admitted to explain the meaning of the instrument. However, pursuant to *Buntin,* the trial court should consider certain factors in determining whether payments are maintenance or property settlement. While the Decree here unambiguously addresses most of the factors, the Decree does not reflect whether the award exceeds the value of the marital assets at the time of dissolution.

In *Buntin,* we emphasized that the trial court should consider "the value of the marital estate and the settlement agreement as a whole." *Buntin,* 496 N.E.2d at 1354. For example, in *Buntin,* we held that the payments of $2,400 for 121 months were a property settlement rather than maintenance based, in part, upon the fact that the wife received only $20,000, the husband received the remaining marital property, and the real estate alone was valued at $320,000.00. Similarly, in *In re Marriage of Millar,* 593 N.E.2d 1182, 1183 (Ind.1992), the Indiana Supreme Court held that payments were property settlement even though the payments were called maintenance where the amount awarded in maintenance was "half of the determined value of the marital estate." While some of the values of the marital

assets are described in the exhibits to the Decree, the value of the marital estate and the amount of the marital estate that Jill received are not clear from the Decree.

While Jill's affidavit indicates some of these necessary values, the Estate correctly objected to the affidavit based upon the Dead Man's Statute, Ind.Code § 34–45–2–4.[2] Jill is "not a competent witness as to matters against the estate." I.C. § 34–45–2–4(d). Furthermore, the trial court considered the affidavit only to decide whether the matter could be resolved on the basis of the Decree alone. We find no indication that the trial court considered the affidavit to determine the value of the marital estate.[3] We conclude that Jill did not have an adequate opportunity to prepare and present evidence regarding the value of the marital estate and the value of marital property that she received. Consequently, we must reverse the trial court's order. We remand for either summary judgment proceedings pursuant to Ind. Trial Rule 56 or a trial pursuant to Ind.Code § 29–1–14–13.

For the foregoing reasons, we reverse the trial court's order disallowing Jill's claim and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, C.J. and MATHIAS, J. concur.

---

2. Ind.Code § 34–45–2–4 provides:
 (a) This section applies to suits or proceedings:
 (1) in which an executor or administrator is a party;
 (2) involving matters that occurred during the lifetime of the decedent; and
 (3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.
 (b) This section does not apply in a proceeding to contest the validity of a will or a proceeding to contest the validity of a trust.
 (c) This section does not apply to a custodian or other qualified witness to the extent the witness seeks to introduce evidence that is otherwise admissible under Indiana Rule of Evidence 803(6).
 (d) Except as provided in subsection (e), a person:
 (1) who is a necessary party to the issue or record; and
 (2) whose interest is adverse to the estate;

 is not a competent witness as to matters against the estate.
 (e) In cases where:
 (1) a deposition of the decedent was taken; or
 (2) the decedent has previously testified as to the matter;
 and the decedent's testimony or deposition can be used as evidence for the executor or administrator, the adverse party is a competent witness as to any matters embraced in the deposition or testimony.

3. The Estate also argues that "[e]ven with the Affidavit, the payments still meet more of the factors for maintenance." Appellee's Brief at 9. However, we noted in *Buntin* that the trial court should consider the value of the marital estate and the settlement agreement "as a whole." *Buntin*, 496 N.E.2d at 1354. Without evidence as to the value of the marital estate, the trial court was missing evidence regarding a significant factor and could not consider the factors "as a whole."