**Sharon DAGUE, individually, and Sharon Dague, as Personal Representative of the Estate of Donald W. Dague, deceased, Appellants–Plaintiffs,**

v.

**FORT WAYNE NEWSPAPERS, INC. and Mark A. Ruble, Appellees–Defendants.**

No. 57A03–9409–CV–351.

Court of Appeals of Indiana, Third District.

March 15, 1995.

Transfer Denied July 25, 1995.

Thereafter, IND.CODE § 9–30–10–17 (1993 Ed.) makes it a Class C felony to drive while privileges are suspended for life.

John O. Feighner, Robert W. Eherenman, Haller & Colvin, Fort Wayne, for appellant.

Richard E. Steinbronn, D. Randall Brown, Barnes & Thornburg, Fort Wayne, for appellee.

## OPINION

STATON, Judge.

Sharon Dague ("Dague"), individually and as personal representative of the estate of her husband, Donald W. Dague, appeals from the trial court's grant of summary judgment in favor of Fort Wayne Newspapers ("Fort Wayne"). In her appeal, Dague presents one issue for our review: whether the trial court erred in granting summary judgment in Fort Wayne's favor.

We reverse and remand.

The facts most favorable to the judgment reveal that on August 2, 1991, Mark A. Ruble ("Mark") was in his automobile delivering newspapers for Fort Wayne when he was involved in a collision with a motorcycle operated by Donald Dague. At the time of the accident, Mark was acting as a substitute newspaper carrier for his wife, Christine Ruble ("Christine"), who was a newspaper carrier for Fort Wayne. Donald Dague died as a result of injuries sustained in the accident.

Dague subsequently brought a wrongful death action against Fort Wayne and Mark alleging that Mark was an employee of Fort Wayne and pursuant to the doctrine of *respondeat superior*, Fort Wayne was liable for the negligent acts of its employee. Fort Wayne filed a motion for summary judgment to dismiss Dague's complaint. After entering extensive findings of facts and conclusions of law, the trial court granted Fort Wayne's motion. This appeal ensued.

Dague now contends that the trial court erred when it granted Fort Wayne's motion for summary judgment because genuine issues of material fact exist precluding summary judgment.

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind. App., 609 N.E.2d 1123, 1127, *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the

parties shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.;* Ind.Trial Rule 56(C).

■ Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 366.

■ Specific findings and conclusions entered by the trial court when ruling on motions for summary judgment merely afford the appellant an opportunity to address the merits of the trial court's rationale. *Campbell v. Spade* (1993), Ind.App., 617 N.E.2d 580, 582. The specific findings and conclusions also aid in our review by providing us with a statement of reasons for the trial court's actions. However, they have no other purpose. *Id.* Rather than relying upon the trial court's findings and conclusions, we must base our decision upon the T.R. 56(C) materials properly presented to the trial court. *Id.*

The trial court found that Christine was an independent contractor and that Mark was acting as her subcontractor on the date of the accident. The court stated that no employer-employee relationship existed between Fort Wayne and Christine or Mark and therefore Fort Wayne could not be held liable to Dague under the doctrine of respondent superior.

The crux of Dague's claim on appeal is that genuine issues of material fact exist regarding whether Fort Wayne had the necessary control and direction over Christine's conduct during the course of her job performance to demonstrate the existence of an employer-employee relationship.

■ Generally, a principal who controls or has the right to control the physical conduct of his agent in the performance of a service is an employer upon whom liability for the torts of the agent may be imposed. In contrast, the employer of an independent contractor is generally not liable for the torts of that contractor. *Detrick v. Midwest Pipe & Steel Inc.* (1992), Ind.App., 598 N.E.2d 1074, 1077.

■ The test for determining the existence of an employer-employee relationship is the right to direct and control that conduct of the alleged employee at the time the negligent act occurred. *Gibbs v. Miller* (1972), 152 Ind.App. 326, 283 N.E.2d 592, 595, *trans. denied.* Such control refers only to the right of control not necessarily the exercise of control over the employee. *Id.*

■ Whether one employed to perform a task acts as an independent contractor or servant is generally a question of fact. *Detrick, supra,* at 1077. However, when the relevant facts are undisputed, the court will determine whether the employer has the right to control the alleged employee. *Id.*

■ The right of control can be determined by a consideration of the following factors: (1) right to discharge; (2) mode of payment; (3) supplying of tools by employer; (4) belief by the parties in the existence of a master servant relationship; (5) control over the means used or result reached; (6) length of employment; and (7) establishing of work boundaries. *Id.*

Indiana courts have previously examined the employment status of a newspaper carrier. In *Wilson v. Kauffman* (1973), 156 Ind. App. 307, 296 N.E.2d 432, 436, this court determined that the relationship between a news carrier and the newspaper raised issues of material fact which precluded summary judgment. In *Wilson,* the court noted that the factual details between the relationship of the parties went beyond the original contractual description of the job of delivering papers and represented a relevant course of conduct between the parties which had to be considered by the trier of fact. *Id.,* 296 N.E.2d at 435. Given that the newspaper determined the type of vehicle and equipment the carrier was to use, gave the carrier a manifest telling him where to deliver the newspapers, furnished a group insurance policy to its carrier, and laid out the carrier's route, the court determined that the facts did not inescapably lead to the conclusion that the carrier was an independent contractor. *Id.,* 296 N.E.2d at 435–436. See also *Dispatch Pub. Co. v. Schwenk* (1941), 109 Ind.

App. 223, 34 N.E.2d 150, 152 (competent evidence existed from which the jury could conclude that driver was a servant or agent to publishing company).

However, in *Brechbiel v. Hentgen et al.* (1937), 103 Ind.App. 481, 8 N.E.2d 1007, 1008, the court concluded that the facts did not show or raise the inference that the newspaper was interested in the manner in which the carrier delivered the papers but was only interested in the result, the subscriber receiving the paper. There, the carrier was solely responsible for payment, for his route of travel, and for obtaining customers. *Id.* He was not under any time limit for delivery nor was he required to make sales. *Id.* The court noted that the only requirement of the carrier was that a minimum of papers be sold in the designated territory. *Id.* Thus, the court determined that the trial court was correct in determining that the carrier was not an employee of the newspaper and properly entered a directed verdict in the newspaper's favor. *Id.*

The materials presented to the trial court in support of and in opposition of the motion for summary judgment set forth the following: Christine started delivering newspapers for Fort Wayne in December 1990. Prior to commencing work, Christine met with Fort Wayne's district manager who informed her that she should ride with the previous carrier to learn the route. During this meeting, Christine was informed of the boundary lines of her route and given a map for the route. Christine signed a Carrier's Agreement ("the Agreement") with Fort Wayne. The Agreement provided that Christine was an independent contractor of Fort Wayne. The Agreement could be terminated by either party without cause with twenty-eight days notice and it could be terminated immediately by Fort Wayne in the event of a breach by Christine. The Agreement stated that Fort Wayne was concerned only with the result of Christine's performance, delivery of newspapers in a manner satisfactory to the custom-

ers, and that Christine controlled the means relating to proper performance and completion of the terms of the agreement. The Agreement further provided that Christine was to be treated as an independent contractor, not as an employee, for federal income tax purposes and that she was responsible for paying her own estimated income tax and self-employment tax.

The record indicates that Christine was solely responsible for delivering the newspapers on her route and was responsible for engaging substitute carriers. Each day she received a subscriber list indicating which persons were to receive papers and which street they lived on. Christine paid for the newspapers and Fort Wayne billed her every two weeks for newspapers purchased. Fort Wayne paid Christine for any money it received by mail from subscribers. In other instances, Christine was responsible for collection and was given a collection book.[1] Fort Wayne provided a price list.

Christine was charged for any customer complaint when the newspaper was delivered late, torn or wet. Fort Wayne did pay her a subsidy for mileage and vehicle repair every two weeks. Fort Wayne: did not provide a vehicle; did not dictate what type of vehicle should be used; and did not inspect Christine's vehicle. Christine could not buy or lease her route, and she could not sell the route to another person if she discontinued as a carrier.

Finally, the record reveals that carriers received a carrier's manual which outlined job responsibilities which included information regarding generating sales, maintaining good service, and maintaining prompt and complete collections.[2] The manual also indicated that accidental insurance and life insurance was available to any carrier.

Dague contends that Fort Wayne's unilateral right to immediately terminate the agreement is indicative of the control Fort Wayne had over the carrier's job and thus

---

1. The record indicates that Fort Wayne initially instructs its carriers to set up a collection schedule and encourages all its carriers to keep the collection book updated.

2. The record indicates that Christine never received this carrier manual. Neither party disputes this fact. Moreover, Fort Wayne does not contend that because Christine did not receive a manual she could not be terminated for the reasons stated therein.

creates a sufficient inference of an employer-employee relationship to preclude summary judgment. Moreover, Dague states that Fort Wayne's mode of payment, supplying of delivery tubes, control over the collection of money, and direction on how to obtain new subscriptions all are indicia of an employer-employee relationship.

Dague relies upon *Brose v. Union–Tribune Pub. Co.* (1986), 183 Cal.App.3d 1079, 228 Cal.Rptr. 620, *rev. denied,* for support.[3] In *Brose,* the regular news carrier for the San Diego Evening Tribune hired a substitute carrier to deliver for her while she went on vacation. *Brose, supra,* 228 Cal.Rptr. at 621. During her deliveries, the substitute carrier was involved in an accident and the injured party sued the Union Tribune Publishing Company. *Id.* The newspaper contended that both carriers were independent contractors and the trial court granted summary judgment in its favor. *Id.* On appeal, the court reversed the grant of summary judgment stating the fact that the carrier could be terminated immediately for violating her carrier's agreement along with the fact that she had to properly assemble the papers, could not sell the route, and furnish a bond to guarantee faithful performance, could lead a reasonable jury to conclude that the carrier was an employee of the newspaper.[4] *Id.,* 228 Cal.Rptr. at 623–625.

As in *Brose, supra,* and *Santiago, supra,* the agreement signed by Christine indicated that the carrier could be terminated immedi-ately for breach of the Agreement but the Agreement gave no definition as to what actions would constitute a breach.[5] This court has stated that while the power to discharge on the one hand and the right to cease work on the other may not be sufficient of itself to establish the employer-employee relationship, it is an important circumstance in establishing such a relationship. *Van Drake v. Thomas* (1942), 110 Ind.App. 586, 38 N.E.2d 878, 882, *reh. denied.*

Fort Wayne counters that the facts are undisputed and lead to but one conclusion, Christine was an independent contractor. Fort Wayne points out that: Christine subjectively believed she was not Fort Wayne's employee; the Agreement expressly referred to her as an independent contractor; Fort Wayne did not withhold any federal income or social security tax in its payments to Christine; Fort Wayne did not furnish any supplies; and most of all, unlike an employer, Fort Wayne had no control over the manner in which Christine conducted her business.

■■■ We note that an employer-employee relationship may be found despite the parties designation of an independent contractor status. *Furr v. Review Bd. of Ind. Emp. Sec. Div.* (1985), Ind.App., 482 N.E.2d 790, 793–794. Though the belief of the parties as to the nature of their relationship is relevant, it is not determinative. *Id.* at 794. In addition, the fact that an employee uses his own vehicle is relevant but not dispositive

---

**3.** Dague also points out *Santiago v. Phoenix Newspapers, Inc.* (1990), 164 Ariz. 505, 513, 794 P.2d 138, 146, in which the Supreme Court of Arizona reversed a grant of summary judgment in favor of the newspaper. The court determined that a jury could infer that the carrier was an employee for Phoenix Newspapers because the newspaper involved itself with the details of delivery, directly received all customers' complaints and changes so as to remove much of the carrier's independence, retained broad discretion to terminate, and relied heavily upon the carrier's services for survival of its business.

**4.** The court noted:
> [In] the advent and rise of the doctrine of wrongful discharge and the erosion of the concept of employment 'at will', freedom from immediate discharge with or without cause does not necessarily negate employee status.

*Brose, supra,* 228 Cal.Rptr. at 624.

The court concluded:
> We do not think newspaper publishers should be insulated from liability involving newspaper carriers by simply arranging compensation to be the difference between wholesale and retail price, by avoiding the appearance of control and by not specifying, for example, exactly how a paper should be folded or delivered. The reality is different.

*Id.,* 228 Cal.Rptr. at 625–626.

**5.** The carrier manual indicated that the Agreement could be breached if the carrier failed to pay bills on time, did not deliver newspapers on time, did not use best efforts to make as many deliveries on the route as possible, and did not furnish immediately upon request a complete list of all customers and individuals to whom the carrier is delivering to at that time along with names, addresses, and payment status.

of the question of employment status. *Wilson, supra,* 296 N.E.2d at 437–438 (citing *Watson v. Tempco Transportation, Inc.* (1972), 151 Ind.App. 644, 281 N.E.2d 131, *trans. denied* ).

Our review of the record reveals that Dague and Fort Wayne do not dispute the facts regarding the mode of payment, the termination portion of the agreement, the supplying of tools and materials, or the parties belief as to the nature of the relationship. However, they do disagree as to whether these facts infer that Fort Wayne exhibited enough control over Christine to establish an employer-employee relationship.

While we acknowledge that the evidence contains facts which point toward the status of an independent contractor, the evidence also contains facts which point toward the status of an employee. In light of the facts and the conflicting inferences which have been drawn therefrom, we conclude that the trier of fact is entitled to consider the totality of the circumstances of this relationship to determine, whether, in fact, Mark was acting as an employee of Fort Wayne at the time of the accident. *Wilson, supra,* 296 N.E.2d at 436. Where undisputed facts lead to conflicting inferences, such a case cannot be decided by summary judgment. *Greathouse, supra,* at 366. We therefore conclude that the trial court erred when it granted Fort Wayne's motion for summary judgment.

In accordance with the foregoing, we reverse the grant of summary judgment in Fort Wayne's favor and remand to the trial court for further proceedings consistent with this opinion.

GARRARD and RUCKER, JJ., concur.