Ronald CROSSNO and Betty Crossno,
Appellants–Plaintiffs,

v.

STATE of Indiana, Appellee–Defendant.

No. 49A04–9907–CV–334.

Court of Appeals of Indiana.

April 11, 2000.

John F. Townsend III, Townsend & Montross, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Attorneys for Appellee.

## OPINION

ROBB, Judge

Ronald Crossno and Betty Crossno (collectively referred to as "the Crossnos") appeal the trial court's grant of summary judgment in favor of the State of Indiana. We affirm in part and reverse in part.

### Issues

The Crossnos raise the following consolidated and restated issues for our review:

1. Whether the trial court properly granted summary judgment in favor of the State with regard to the Crossnos' permit-related claims;

2. Whether the trial court properly granted summary judgment in favor of the State with regard to the Crossnos' claim that the State was negligent in the design, construction, and maintenance of the bridge overpass; and

3. Whether the trial court properly granted summary judgment in favor of the State with regard to the Crossnos' claim that the Stated failed to warn of the height restrictions of the bridge overpass.

### Facts and Procedural History

The facts most favorable to the non-movant reveal that on June 22, 1994, Peter Morris, a truck driver for Landstar Ranger Inc. ("Ranger"), was hauling a steel truss from West Virginia to Burns Harbor, Indiana. The permit to transport this oversized load through Indiana was dated June 20, 1994, and had been obtained by Ranger from a third-party permit service. The permit listed the combined height of the steel truss and semi-trailer as 14 feet. However, prior to commencing the journey, Morris measured the actual combined height as 14 feet 2¼ inches.

On June 22, 1994, Morris called the Indiana Department of Transportation ("INDOT") for assistance after discovering that he could not follow the route listed on the permit because a specified exit ramp in

Indiana did not exist. Morris informed INDOT employee Rose Mroczka of the routing problem and that he was hauling a load 14 feet 5 inches high. After obtaining her supervisor's approval, Mroczka changed Morris' route through northern Indiana. Moreover, she instructed Morris to change his permit to reflect the altered route, and informed him that INDOT would notify the permit service of the change.

Although Mroczka changed Morris' route to Burns Harbor, Indiana, she forgot to consult a reference map to confirm the highway overpass height restrictions. Consequently, Morris attempted to drive under a bridge overpass with a marked clearance of 14 feet, resulting in the steel truss striking the overpass and hitting the Crossnos' vehicle.[1] On June 22, 1995, the Crossnos' filed a complaint against Morris, Ranger, and the State in the Marion Superior Court. Thereafter, the State filed a motion for summary judgment and supporting memorandum on August 17, 1998, which the court granted in favor of the State with regard to all of the Crossnos' claims on June 1, 1999. This appeal ensued.

### Discussion and Decision

#### I. Standard of Review of Summary Judgment

We employ the same standard used by the trial court when reviewing the grant or denial of summary judgment. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1139 (Ind.Ct.App.1995), *trans. denied.* "Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Id.* at 1139–40 (citing Ind. Trial Rule 56(C)). Although our analysis proceeds from the premise that summary judgment is rarely appropriate in negligence actions, "a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claims." *Colen v. Pride Vending Serv.,* 654 N.E.2d 1159, 1162 (Ind.Ct.App. 1995), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity" on appeal, and the appellants bear the burden of demonstrating that the trial court erred. *Id.* Nevertheless, we must carefully scrutinize the trial court's decision to ensure that the Crossnos were not improperly denied their day in court. *See id.*

As the moving party, the State bears the burden of demonstrating the absence of a factual issue and its entitlement to judgment as a matter of law. *Id.* When the defendant makes a motion for summary judgment supported by materials contemplated by T.R. 56, the plaintiff may not rest on the pleadings, but must set forth specific facts controverting the claim for summary judgment, using supporting materials contemplated by the rule. *Id.* at 1162–63. Should the non-moving party fail to meet this burden, summary judgment may be granted. *Id.* at 1163. However, "[w]here material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial." *Dague,* 647 N.E.2d at 1140.

#### II. The Crossnos' Permit–Related Claims

The Crossnos contend that the trial court erred in granting summary judg-

---

1. Although all warning signs at or near the overpass marked its clearance as 14 feet, Mroczka's reference map listed the clearance as 14 feet 5 inches. In its response to interrogatories submitted by the owner of the Crossnos' truck in the course of a separate lawsuit (designated by the State in its summary judgment motion against the Crossnos), the State asserted that the actual clearance was 14 feet 2 inches. In its response to interrogatories submitted by the Crossnos (designated by them in response to the State's summary judgment motion), the State asserted that the actual clearance was 14 feet 4 inches (with a flange bent down as a result of the collision providing only 14 feet 2 inches of clearance).

ment in favor of the State with regard to their claim for the negligent issuance of a permit. The Crossnos further contend that "[e]ven if negligent issuance of a permit could be found as a cause of loss," the State's negligent training and supervision of Mroczka and failure to maintain accurate reference maps or disclaim responsibility for their inaccuracy did not entitle it to immunity under the Act. We disagree.

■ We note initially that governmental immunity from suit is regulated by the Indiana Tort Claims Act ("the Act"), Indiana Code sections 34–13–1–1 through 34–13–6–7. Pursuant to the Act, governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies. *Scott v. City of Seymour,* 659 N.E.2d 585, 588 (Ind.Ct. App.1995). The relevant immunity provision in the Act provides in pertinent part that:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law.

Ind.Code § 34–13–3–3(10).

■ The entity seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. *Scott,* 659 N.E.2d at 588. Because the Act is in derogation of the common law, it is narrowly construed against the grant of immunity. *Jacobs v.*

*Board of Comm'rs of Morgan County,* 652 N.E.2d 94, 98 (Ind.Ct.App.1995), *trans. denied.* Whether a governmental entity is immune from liability is a question of law for the courts, although it may include an extended factual development. *Peavler v. Board of Comm'rs of Monroe County,* 528 N.E.2d 40, 46 (Ind.1988).

■ Rather than relying on principles of immunity, the State argues that the Crossnos are collaterally estopped from litigating their claims by the unpublished memorandum decision in *DTF Trucking, Inc. v. Indiana Dep't of Transp., et al.,*[2] 709 N.E.2d 762 (Ind. Ct.App. April 29, 1999), *trans. denied,* in which another panel of this court granted summary judgment in favor of the State and against DTF Trucking[3] regarding its claim that the State failed to "1) provide a route that could be safely traveled upon; 2) properly train and supervise [Mroczka]; 3) maintain accurate bridge height maps; and 4) warn [Morris] of any map inaccuracies."[4] *Id.,* slip op. at 5, 709 N.E.2d 762. In *DTF Trucking,* another panel of this court held that the State was entitled to immunity pursuant to Indiana Code Section 9–20–6–6, which provides in pertinent part that:

a) The Indiana department of transportation or local unit authorized to issue permits under this chapter may issue permits for transporting semitrailers or trailers designed to be used with semitrailers that exceed the weight and length limitations imposed under this article from the manufacturing facility to the person taking title to the vehicle, including any other destination in the marketing cycle.

**2.** For purposes of clarity, we shall refer to INDOT as "the State" unless otherwise noted in our discussion of *DTF Trucking.*

**3.** DTF Trucking owned the truck Morris was driving when the steel structure he was hauling collided with the bridge overpass, fell off his truck, and struck the Crossnos' vehicle. Consequently, DTF Trucking sued the State in

order to recover damages for the loss of the truck.

**4.** The "failure to warn" claim at issue in *DTF Trucking* should not be confused with the similarly worded claim in the Crossnos' complaint, which refers to the lack of interstate signage erected to inform drivers of overpass height restrictions.

b) A permit issued under this section may designate the route to be traversed and may contain any other restrictions or conditions required for the safe movement of the vehicle.

*Id.* Because "[t]he term 'may' in a statute ordinarily indicates a permissive condition or discretion," we concluded that "the designation of a route for an oversize load permit is a discretionary function of [the State]." *Id.* (citing *Haltom v. Bruner*, 680 N.E.2d 6, 9 (Ind.Ct.App.1997)).

At the point when [Morris] could no longer follow his route as mandated in his original permit, [he] contacted [the State]. [The State] provided [Morris] with an alternative route to travel. This alternative route amounted to nothing more than an authorization similar to that which was granted in the original routing permit. Furthermore, it was within [the State's] discretion to authorize this subsequent modification of [Morris's] route. *See* Ind.Code § 9–20–6–6(b). Consequently, [the State] is immune from liability for any damages arising from its modification of the original permit.

*Id.* at 5–6, 709 N.E.2d 762.

■ We agree with the Crossnos that the principle of collateral estoppel is inapplicable in the case at bar because they have never had a "full and fair opportunity to litigate the issue" of the State's immunity under the Act. *See Slutsky v. Crews*, 713 N.E.2d 288, 291 (Ind.Ct.App.1999) ("in determining whether the defense use of collateral estoppel is appropriate, the court must consider whether the party against whom the judgment is pled has had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.") The Crossnos are also correct that under Indiana Appellate Rule 15(A)(3), an unpublished memorandum decision of this court shall neither "be regarded as precedent nor cited before any court except for the purpose of establishing the defense of

res judicata, collateral estoppel, or the law of the case." Nevertheless, we agree with the reasoning expressed by our colleagues in *DTF Trucking*, and conclude that the trial court did not err in granting summary judgment with respect to the Crossnos' permit-related claims of negligent training and supervision and failure to maintain accurate reference maps or disclaim responsibility for their accuracy.

III. The Crossnos' Negligent Design, Construction, Maintenance of the Bridge Overpass and Failure to Warn Claims

The Crossnos also contend that the trial court erred in granting summary judgment in favor of the State with regard to their negligent design, construction, and maintenance of the bridge overpass and failure to warn claims. We agree.

■ The Crossnos argue that "[t]he torts of negligent highway design, construction, maintenance, as well as the tort of negligent failure to warn via adequate signage are so obviously unrelated to the State's actions with respect to issuing oversize load permits, that they were never even addressed by the State in the arguments, evidence, and authority submitted to the trial court in connection with the Motion for Summary Judgment." Brief of Appellant at 7. In response, the State argues that the Crossnos are collaterally estopped from litigating their claims by *DTF Trucking*.

On June 22, 1995, the Crossnos filed a complaint against the State of Indiana alleging: 1) negligence in the design, construction, and maintenance of the bridge overpass; 2) failure to warn of the height restrictions of the bridge overpass; and 3) negligence in the issuance of a permit. R. 10. In response, the State moved for summary judgment, arguing that it "is immune from suit under Indiana Code section [34–13–3–3(10) ] because of the harm complained of here is the issuance of a license, permit, or other authorization where the

authority is discretionary." R. 36. Furthermore, the State argued in its Memorandum in Support of Summary Judgment that:

The Plaintiff alleges that State Defendants were negligent [in the] design, construction, maintenance of the bridge overpass, failure to warn of bridge height, and issuing the oversized load permit. However, nothing in Plaintiff's complaint details how the bridge construction was negligent, and the bridge height was clearly marked load.... Rather, the gravamen of Plaintiff's complaint is that the Indiana Department of Transportation gave Morris and Ranger Transportation a permit to operate an oversized load on Indiana Highways. Issuance of a permit, however, is something for which the General Assembly has explicitly conferred governmental immunity. Thus, the State of Indiana is entitled to judgment as a matter of law. Ind.Code § 34–4–16.5–3(10)[now Ind. Code § 34–13–3–3]. Indeed, to hold otherwise would allow Plaintiff to circumvent the operation of the [Indiana Tort Claims] Act through artful pleading, something which Indiana law does not allow.

R. 44–45.

We believe any reference to negligence is anecdotal and not the basis of the State's summary judgment motion. In addition, the language taken as a whole in the motion only raises the issue of the permit. The issuance of a permit to a truck driver is clearly unrelated to the State's design, construction, and maintenance of a bridge overpass and the failure to warn via signage. Thus, the State moved for summary judgment *solely* on the Crossnos' claim of the State's negligent issuance of a permit.

■■■ However, the trial court granted summary judgment in favor of the State with regard to all of the Crossnos' claims. R. 256. No provision of Trial Rule 56(C) authorizes the entry of summary judgment sua sponte, and this court has noted that "the practice should be used only rarely and with caution." *Jones v. Berlove*, 490 N.E.2d 393, 395 (Ind.Ct.App.1986) (citing *State ex rel. Van Buskirk v. Wayne Township*, 418 N.E.2d 234, 247 (Ind.Ct.App. 1981)). "The paramount consideration is whether the party against whom summary judgment has been entered had notice and an adequate opportunity to prepare and present materials in opposition." *Id.*

The Crossnos stated in their Plaintiff's Response to Defendant State of Indiana's Motion for Summary Judgment that because "these claims are not addressed by Indiana Code section [34–13–3–3] pertaining to the issuance of permits, they are not addressed in this response to the State's motion...." R. 100. The Crossnos' argument and designation of materials in response to the State's motion was limited to their claim of the State's negligent issuance of a permit. R. 99–109. Consequently, the Crossnos did not have an adequate opportunity to prepare and present materials in opposition to the State's motion for summary judgment with regard to their negligent design, construction, and maintenance of the bridge overpass and failure to warn claims.

■■■ We believe that the Crossnos must have an opportunity to present materials showing the existence of a genuine issue of material fact regarding these two claims. Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of over-kill in its use. *Funk v. Funk*, 563 N.E.2d 127, 129 (Ind.Ct.App.1990), *trans. denied.* Moreover, summary judgment is inappropriate where the information before the court reveals a good faith dispute as to the inferences to be drawn from the evidence. *Id.* Summary judgment is rarely appropriate in negligence actions; issues of negligence, contributory negligence, causation, and reasonable care are most appropriately left for a determination by the trier of fact. *Jump v. Bank of Versailles*, 586 N.E.2d 873, 875 (Ind.Ct.App.1992). In ad-

dition, the mere improbability of recovery by a plaintiff does not justify summary judgment against him. *Four Winns, Inc. v. Cincinnati Ins. Co., Inc.*, 471 N.E.2d 1187, 1188 (Ind.Ct.App.1984), *trans. denied.*

Besides, we believe that the trial court erred in granting summary judgment on the Crossnos' negligent design, construction, and maintenance of the bridge overpass and failure to warn claims because there is a question of fact for the jury even though the State has a contributory defense. A genuine question of fact exists regarding whether the State was negligent in the design, construction, and maintenance of the bridge overpass and whether it was negligent in failing to warn motorist of the height restrictions of the overpass. For purposes of summary judgment, we may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party. T.R. 56(C); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993).

In support of its motion, the State designated the Crossnos' complaint and the State's response to questions number nine and six of the Crossnos' interrogatories. R. 36. The State's answer to interrogatory number nine concerns the telephone call between the truck driver and the INDOT employee about the issuance of the permit. The State's answer to interrogatory number six provides that warning signs were located near the overpass prior to the accident. R. 41. Summary judgment is an appropriate disposition only if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C); *see e.g., Nobles v. Cartwright*, 659 N.E.2d 1064, 1069 (Ind.Ct.App.1995). We believe that this statement, standing alone, is insufficient for purposes of summary judgment. Additionally, this designation was made in support of the State's motion for summary judgment on the issue of the negligent issuance of the permit, not the Crossnos' other two claims.

Furthermore, we believe that a question of fact exists even though the issue is contributory negligence because we cannot say as a matter of law that the truck driver was contributorily negligent. Contributory negligence is conduct on the part of the plaintiff that falls below the standard to which he should conform for his own protection and safety. *Rogers v. Grunden*, 589 N.E.2d 248, 257 (Ind.Ct. App.1992). Contributory negligence is generally a question of fact for the jury unless the material facts are undisputed. *Id.* at 258. Only when a single inference can be reasonably drawn from such facts will contributory negligence be a question of law appropriate as a basis for summary judgment. *Id.* The evidence conflicts as to the actual height of the bridge overpass and the height restrictions contained in the warning signs. Moreover, the conversation between the truck driver and the IN-DOT employee was designated for summary judgment purposes. We decline to hold as a matter of law that contributory negligence exists in the present case.

### Conclusion

Based on the foregoing, we hold that the State is entitled to summary judgment solely on the Crossnos' permit-related claims. Summary judgment should be reversed with regard to the Crossnos' negligent design, construction, and maintenance of the bridge overpass and failure to warn claims.

Affirmed in part, reversed in part and remanded for further proceedings.

NAJAM, J., concurs.

BROOK, J., concurs in part and dissents in part with opinion.

BROOK, Judge, concurring in part and dissenting in part

I fully concur with the majority's affirmation of summary judgment on the Crossnos' permit-related claims. However, I respectfully dissent from the majority's reversal of summary judgment on the Crossnos' claims for the State's negligent design, construction, and maintenance of the bridge overpass and failure to warn of the overpass height restrictions.

In response to the State's summary judgment motion, the Crossnos asserted that "the issuance of a permit directing Morris underneath a low overpass is obviously unrelated to the State's design, construction and maintenance of the bridge, as well as its failure to warn via signage." While I recognize that the Trial Rules do not authorize a sua sponte entry of summary judgment, I cannot agree with the majority's conclusion that the Crossnos "did not have an adequate opportunity to prepare and present materials in opposition to the State's motion for summary judgment" on these issues. Moreover, contrary to the majority, I believe the Crossnos' permit-related claims and their claims regarding the negligent design, construction, and maintenance of the overpass are both factually and legally inseparable. Their purely tactical decision not to designate additional evidence to demonstrate the existence of a genuine issue of material fact should not preclude the grant of summary judgment with respect to their overpass-related claims.

Absent any indication to the contrary, the Crossnos' allegations regarding the overpass are premised solely on their assumption that the overpass was too low.

The overpass was indeed too low for Morris's *oversized* load: a circumstance that necessitated the State's issuance of a permit directing Morris to travel underneath certain overpasses with sufficient clearance heights to allow his safe passage over Indiana highways. The overpass in question did not have a sufficient clearance height—not because it was negligently designed, constructed, or maintained, but because the State mistakenly instructed Morris to transport his oversized load underneath it. The majority has held, and I agree, that the State is immune from any liability for instructing Morris to drive underneath the overpass. In my view, however, the fact that the overpass was too low for his load is directly related to the State's discretionary issuance of the oversized load permit and should not be considered a genuine issue of material fact precluding summary judgment on the Crossnos' overpass-related claims. Had the overpass collapsed when it was struck by the steel truss and injured Crossno, a genuine issue of material fact might have remained with respect to its design, construction, and maintenance because such an occurrence would not have been inherently contingent upon the Crossnos' permit-related claims. Such is not the case here.[5]

With respect to the Crossnos' failure to warn claim, the uncontroverted evidence designated *by both parties* reflects that in May 1993 – more than one year before the accident – the State erected two 48–inch–by–48–inch yellow warning signs at 2,892 feet and two identical signs at 454 feet south of the overpass, in addition to plac-

**5.** In its summary judgment memorandum, the State asserted that the Crossnos' complaint failed to detail "how the bridge construction was negligent." Although merely alleging that a plaintiff has failed to produce evidence on each element of a claim "is insufficient to entitle the defendant to summary judgment under Indiana law," *Jarboe v. Landmark Community Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 123 (Ind.1994), we may affirm the trial court's grant of summary judgment "on any legal basis supported by the designated evidentiary material." *Wolfe v. Stork RMS–Protecon, Inc.,* 683 N.E.2d 264, 267 (Ind.Ct.App.1997). For the reasons stated above, I believe the factual and legal inseparability of the Crossnos' permit- and overpass-related claims would allow this court to affirm the trial court's grant of summary judgment on the latter claims based on the evidence designated in support of the former.

ing one 42–inch–by–24–inch yellow warning sign on the south side of the overpass itself. All signs marked the overpass clearance as 14 feet.[6] It is important to note that at the trial court level, the Crossnos based their claim not on the *adequacy* of the warning signage erected by the State, but strictly on the State's *failure* to warn of the overpass height restrictions altogether.[7] Because the designated evidence demonstrates the absence of a genuine issue of material fact regarding the State's alleged failure to warn, I believe the trial court properly granted summary judgment on this claim.

Accordingly, I would affirm the trial court's judgment in all respects.

**6.** *See* IND. ADMIN. CODE tit. 105, r. 9–2–1 (1996) (recognizing INDOT's adoption of INDIANA MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES FOR STREETS AND HIGHWAYS (1988)); *see also* INDIANA MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES FOR STREETS AND HIGHWAYS at 2C–25, 2C–26 (1988) (depicting, describing, and authorizing the use of "low clearance" and "clearance height" signs on or in front of "overhead structures" with a clearance of less than 14 feet 6 inches).

**7.** In their appellate brief, the Crossnos assert for the first time that the "tort of negligent failure to warn via *adequate* signage" is unrelated "to the State's actions with respect to issuing oversize load permits." (Emphasis added.) It is well settled that "[a]n appellant who has presented his case to the trial court on a certain definite theory shall not be permitted to change on appeal and prevail upon another theory not previously advanced." *Thompson v. Public Serv. Co. of Indiana, Inc.,* 499 N.E.2d 788, 791 (Ind.Ct.App.1986), *trans. denied* (1987). Thus, I respectfully submit that the Crossnos should not be permitted to avoid summary judgment simply by reframing their issues at this stage of the proceedings, and that the issue of contributory negligence addressed by the majority should be considered moot for purposes of this appeal.