Rakesh **CHANDRADAT**, Phulmattie Chandradat, Individually and as Father and Mother of Ryan Chandradat, Deceased, Appellants–Plaintiffs,

v.

STATE of Indiana, INDIANA DEPARTMENT OF TRANSPORTATION, Appellees–Defendants.

No. 45A04–0409–CV–492.

Court of Appeals of Indiana.

June 30, 2005.

Patrick B. McEuen, Millbranth & Bush, Valparaiso, for Appellants.

Stacy J. Vaslik, Bruce P. Clark & Associates, Munster, for Appellees.

## OPINION

KIRSCH, Chief Judge.

Rakesh and Phulmattie Chandradat, individually and as parents of Ryan Chandradat, deceased, appeal the trial court's grant of summary judgment in favor of the Indiana Department of Transportation ("INDOT") and the State of Indiana (collectively, the "State") in the Chandradats' suit alleging negligence and wrongful death. On appeal, the Chandradats raise the following restated issues:

I.  Whether the trial court erred in finding that the State owed no duty to the Chandradats.

II. Whether the trial court erred in determining that there was no genuine issue of material fact as to whether the State's actions were a proximate cause of Ryan's death and the Chandradats' injuries.

III. Whether the trial court erred in finding that the State was entitled to immunity under the Indiana Tort Claims Act (the "ITCA") for its planning of construction for Interstate 80/94, which was the site of the accident.

On appeal, the State also raises the following restated issues:

IV. Whether the trial court erred in finding that the Chandradats had sufficiently complied with IC 34-13-3-6—the notice requirement of the ITCA—which put the State on notice that the Chandradats intended to bring an action for the wrongful death of their son.

V.  Whether the trial court erred in concluding that the applicability of the statutory cap on damages should be determined only after the jury's verdict.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In the spring of 2001, the State was engaged in Phase VI of a massive, multiphase, road construction project to widen and resurface Interstate 80/94 ("I80/94") in Lake County. As part of Phase VI, the left lane of the eastbound interstate was closed and the remaining two eastbound lanes were routed to the westbound lane. Occasionally, night construction required the closure of two of the three eastbound lanes.

On May 25, 2001, at approximately 1:50 a.m., the Chandradats and their six-year-old son, Ryan, were passengers in a Toyota sport utility vehicle (the "SUV") that was traveling eastbound on I80/94. That night, the highway had been reduced to only one lane traveling eastbound. The rerouting and lane closures resulted in stop-and-go traffic. Tim R. Johnson was driving a semi tractor-trailer ("semi") behind the SUV as it approached the Kennedy Avenue overpass. Just east of the 3.3-mile marker, the SUV was stopped in a traffic jam. Soon thereafter, Johnson smashed into the back of the stopped SUV, causing Ryan's death and his parents to sustain injuries.

The Chandradats filed suit against the State, among others, alleging claims of negligence and wrongful death.[1] The State moved for summary judgment on the basis that: (1) the Chandradats failed to

---

1. Walsh Construction Company of Illinois and Traffic Maintenance Corporation were also defendants in the original action but settled their claims in mid-2004. At the outset of the case, the driver and front seat passenger of the SUV were plaintiffs in the action. After settling with Walsh and Traffic Maintenance, those plaintiffs were fully compensated for their personal injuries and were dismissed from the case.

comply with the ITCA notice requirement; (2) the ITCA cap on damages limited the Chandradat parents to $300,000 each, including damages for the death of their son; (3) the State's actions were not the proximate cause of the Chandradats' injuries; and (4) the State was entitled to discretionary function immunity under IC 34–13–3–3(7) of the ITCA. The trial court granted summary judgment on the basis that the proximate cause of the accident was solely the negligence of Johnson, the driver of the semi, and that the State owed no duty to the Chandradats for the acts or omissions of Johnson. The trial court also noted that the State was entitled to discretionary function immunity. The Chandradats now appeal.

## DISCUSSION AND DECISION

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Correll v. Indiana Dept. of Transp.*, 783 N.E.2d 706, 707 (Ind.Ct.App.2002), *trans. denied* (2003). When reviewing a grant of a motion for summary judgment, the appellate standard of review is the same as that for the trial court. *Estate of Cullop v. State*, 821 N.E.2d 403, 407 (Ind.Ct.App.2005). Summary judgment is only appropriate where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Estate of Cullop*, 821 N.E.2d at 407. All facts and reasonable inferences are construed in favor of the nonmoving party. *Estate of Cullop*, 821 N.E.2d at 407.

Although a trial court's grant of summary judgment is " 'clothed with a presumption of validity' on appeal," we carefully review the court's decision to ensure that a party is not denied its day in court.

*Crossno v. State*, 726 N.E.2d 375, 378 (Ind. Ct.App.2000) (quoting *Colen v. Pride Vending Serv.*, 654 N.E.2d 1159, 1162 (Ind. Ct.App.1995), *trans. denied* (1996)). Indeed, summary judgment should not be used as an abbreviated trial. *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 512 (Ind.Ct.App.2000).

We further observe that summary judgment is rarely appropriate in negligence claims. *Crossno*, 726 N.E.2d at 381; *Templeton v. City of Hammond*, 679 N.E.2d 1368, 1370 (Ind.Ct.App.1997). Rather, issues of negligence, contributory negligence, causation, and reasonable care are most appropriately left for a determination by the trier of fact. *Crossno*, 726 N.E.2d at 381. The mere improbability of recovery by a plaintiff does not justify summary judgment against him. *Crossno*, 726 N.E.2d at 382.

To recover under a theory of negligence, plaintiffs must establish three elements: (1) a duty owed to the plaintiffs; (2) a breach of that duty by the defendants; and (3) the breach proximately caused the plaintiffs' damages. *Estate of Cullop*, 821 N.E.2d at 407; *Sizemore v. Templeton*, 724 N.E.2d 647, 650 (Ind.Ct. App.2000). Whether a defendant owes a duty of care to a plaintiff is generally a question of law for the court to decide. *Estate of Cullop*, 821 N.E.2d at 407. Nevertheless, whether a particular act or omission is a breach of duty is generally a question of fact for the jury. *Id.*

### I. Duty

The Chandradats allege that the State owed them a duty to properly maintain the section of roadway in and around the mile marker where the accident occurred. *Appellants' Appendix* at 51. More specifically, they contend that the State improperly designed temporary traffic flows and lane configurations, failed to

properly reduce the speed limit in advance of the construction zone, and further failed to put up proper warning signs regarding the dangers in the construction area. *Id.* at 51–52.

The trial court, having found that Johnson was the sole proximate cause of the accident, reframed the issue as whether the State owed the Chandradats a duty for the acts or omissions of Johnson, and concluded that it did not. *Id.* at 2. Notwithstanding the trial court's conclusion, we address the issue as the Chandradats raised it—whether the *State* owed them a duty.

■ The State has a general duty to the traveling public to exercise reasonable care in the design, construction, and maintenance of its highways for the safety of public users.[2] *Mishler,* 730 N.E.2d at 231. The Chandradats were part of the traveling public. Furthermore, by statute, an Indiana governmental agency that is responsible for the signing, marking, and erection of traffic control devices on streets and highways within Indiana has a duty to follow the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways ("Traffic Manual"). IC 9–21–4–1. While the Traffic Manual is not a legal basis for a statutory negligence action,[3] the Traffic Manual is evidence bearing upon the general duty to exercise reasonable care. *Daily Exp., Inc.,* 503 N.E.2d at 1240. Here, the Chandradats allege that the State failed to comply with the Traffic Manual's provisions. This evidence of negligence, like any other evidence, should be made available to the jury so that it can make the ultimate factual determination of liability. *Id.; see also Fulton County Comm'rs v. Miller,* 788 N.E.2d 1284, 1286 (Ind.Ct.App.2003) (trial court did not abuse its discretion when it admitted into evidence portions of Traffic Manual as evidence of negligence). The trial court erred in finding, as a matter of law, that the State did not owe the Chandradats a duty of care.

## II. Proximate Cause

■ The trial court granted the State's motion for summary judgment after concluding that the negligence of truck driver Johnson was the sole proximate cause of the accident and resulting injuries. *Appellants' Appendix* at 2. The Chandradats contend that the trial court erred in granting summary judgment on this basis because there was a genuine issue of material fact as to whether the State's actions were also a proximate cause of Ryan's death and the Chandradats' injuries.

■ In determining whether an act is a proximate cause of an injury, we consider whether the injury was a natural and probable consequence of the negligent act, which, in light of the attending circumstances, could have been reasonably foreseen or anticipated.[4] *Guy's Concrete, Inc.*

---

**2.** IC 34–13–3–3(18), which grants conditional governmental immunity for the design of a highway, provides: "[T]his subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition."

**3.** The Traffic Manual does not generally impose the kind of specific requirements or absolute standards of conduct necessary to establish prima facie evidence of negligence. As such, it should not be used as a basis for a statutory negligence action. *Indiana State Highway Comm'n v. Daily Exp., Inc.,* 503 N.E.2d 1237, 1240 (Ind.Ct.App.1987).

**4.** In *Goldsberry v. Grubbs,* 672 N.E.2d 475, 479 (Ind.Ct.App.1996), *trans. denied,* we differentiated between foreseeability as a component of duty and foreseeability in the context of proximate cause as follows:

Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident

v. Crawford, 793 N.E.2d 288, 297–98 (Ind. Ct.App.2003), trans. denied. Our supreme court has held that "if harm is a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable even though other independent agencies intervene between his negligence and the ultimate result." Estate of Heck ex rel. Heck v. Stoffer, 786 N.E.2d 265, 271 (Ind.2003). Thus, reasonably foreseeable intervening acts do not break the chain of causation and the "original wrongful act will be treated as a proximate cause." Guy's Concrete, 793 N.E.2d at 298 (citing Heck, 786 N.E.2d at 271).

▮▮▮▮▮ The key to determining whether an intervening agency has broken the original chain of causation is to decide whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury. Arnold v. F.J. Hab, Inc., 745 N.E.2d 912, 917 (Ind.Ct.App. 2001). If the intervening cause was not reasonably foreseeable, the original negligent actor is relieved of any and all liability resulting from the original negligent act. Id. " 'The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified.' " Id. (quoting Straley v. Kimberly, 687 N.E.2d 360, 364 (Ind.Ct. App.1997), trans. denied ). In general, "[t]he foreseeability of an intervening cause and, thus, whether the defendant's conduct is the proximate cause of the plaintiff's injuries, is a question of fact for the jury's determination." Id.

Here, evidence before the trial court revealed: (1) INDOT closed two of three lanes during a holiday weekend, when congestion was likely; (2) the double lane closure was in effect for less than two hours before the accident; (3) the INDOT representative expected that a lane closure could produce a traffic jam as far as eighteen miles prior to the point of the closure; (4) a licensed professional traffic operations engineer opined that the traffic control signage was an improper combination of redundant and nonspecific signs and did not comply with the minimum standards of the Traffic Manual; and (5) Johnson, an experienced truck driver, found the I80/94 lane designations and markings "very confusing." Appellants' Appendix at 140, p 194.

Viewing this evidence in the light most favorable to the nonmoving party, we cannot say that there was no genuine issue of material fact as to whether the State's actions here were a proximate cause of the accident. The trial court erred in concluding, as a matter of law, that Johnson was the sole proximate cause of the accident.

### III.  Immunity [5]

▮▮▮ The Chandradats finally contend that the State is not entitled to discretion-

---

occurs. According to the American Law Institute, foreseeability for proximate cause purposes is determined from a perspective that is "after the event and looking back from the harm to the actor's negligent conduct." Restatement (Second) of Torts § 435(2) (1965).... "A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated." Thus, when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred.

Goldsberry, 672 N.E.2d at 479 (emphasis in original) (citations omitted); see Guy's Concrete, 793 N.E.2d at 298.

5.  In its order, the trial court granted summary judgment on the basis that Johnson was the sole proximate cause of the Chandradats' injuries. The trial court then found that the

ary function immunity under IC 34–13–3–3(7). In *Peavler v. Bd. of Comm'rs of Monroe County,* 528 N.E.2d 40, 45 (Ind. 1988), our supreme court developed the "planning/operational" test for determining whether a particular function is discretionary. *Bd. of Comm'rs of County of Harrison v. Lowe,* 753 N.E.2d 708, 716 (Ind.Ct. App.2001), *trans. denied* (2002).

▇▇ "Through the planning-operational test, we distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity." *Greathouse v. Armstrong,* 616 N.E.2d 364, 366–67 (Ind.1993). The critical inquiry associated with the test is "not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Id.* (citing *Peavler,* 528 N.E.2d at 45).

Here, the affidavit of the INDOT project engineer, Ismail Attallah, revealed that his involvement in this project began after the project was designed, let, and awarded to the contractor. *Appellants' Appendix* at 180, p. 14. Attallah stated that a project designer puts the construction plan together. Since the process can take three to five years, a project engineer does not usually get involved in the early stages. *Id.* at p. 15. Once the construction plans are completed, the project engineer familiarizes himself with the plans and work with the contractor to set the schedule.

Traffic Maintenance Corporation ("TMC") was the contractor responsible for placing the lane restriction signage. TMC's work was supervised by INDOT, which could require TMC to make changes

if signage was deemed inadequate or improperly placed. *Id.* at 188, p. 45. TMC's work was conducted pursuant to the plans, specifications, and direction of INDOT. Attallah testified that the designer is responsible for the signage standards set by the Traffic Manual. *Id.* at 209, p. 132. Furthermore, he testified that he does not determine where the signs are placed, but instead implements the plan. *Id.* at 210, p. 134.

Under the facts presented, we conclude that the placement of the signs was not part of the planning for Phase VI of the construction; instead, it was part of the implementation. The State is not immune from negligence that results in the implementation part of a project. *Greathouse,* 616 N.E.2d at 366–67.

Here, the State did not qualify for discretionary function immunity under the ITCA.

## IV. ITCA Notice

▇▇ The ITCA governs lawsuits against the State and its subdivisions and requires a plaintiff to provide early notice of its intention to sue. *Fowler v. Brewer,* 773 N.E.2d 858, 861 (Ind.Ct.App.2002), *trans. denied.* As a precondition to suing the State of Indiana and its agencies, a plaintiff must first satisfy the notice requirements set forth in IC 34–13–3–6 and –10. IC 34–13–3–6, in pertinent part, provides:

(a) Except as provided in sections 7 and 9 of this chapter, a claim against the state is barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs. Howev-

State was entitled to immunity and concluded, "the defendants are entitled to immunity for their discretionary actions and for any negligence on the part of Tim R. Johnson." *Appellants' Appendix* at 3. Although immunity

is usually a threshold determination, because we find that the State was not entitled to immunity, we discuss this issue in the order raised by the Chandradats.

er, if notice to the state agency involved is filed with the wrong state agency, that error does not bar a claim if the claimant reasonably attempts to determine and serve notice on the right state agency.

IC 34–13–3–10 sets forth the content requirements of the notice that a plaintiff must provide to the State and any agency it intends to sue as follows:

> The notice required by sections 6, 8, and 9 of this chapter must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

██ "[N]otice is sufficient if it substantially complies with the content requirements of the statute." *Howard County Bd. of Comm'rs v. Lukowiak*, 810 N.E.2d 379, 382 (Ind.Ct.App.2004), *clarified on reh'g*, 813 N.E.2d 391 (Ind.Ct.App. 2004); *see also Collier v. Prater*, 544 N.E.2d 497, 499 (Ind.1989). " 'What constitutes substantial compliance, while not a question of fact, but one of law, is a fact-sensitive determination.' " *Lukowiak*, 810 N.E.2d at 382 (quoting *Collier*, 544 N.E.2d at 499).

██ In determining whether substantial compliance is established, we note the purpose of the notice requirements as follows:

> "[T]o inform state officials with reasonable certainty of the accident or incident and surrounding circumstances and to advise of the injured party's intent to assert a tort claim so that the state may investigate, determine its possible liability, and prepare a defense to the claim."

*Garnelis v. Indiana State Dep't of Health*, 806 N.E.2d 365, 368 (Ind.Ct.App.2004) (quoting *Indiana Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1076 (Ind.Ct.App.2001), *trans. denied* (2002)).

While admitting that the notice was sufficient for the suit in negligence, the State asserts that the Chandradats did not specify that they were suing for wrongful death and, as such, that the trial court erred in concluding that the Chandradats gave it sufficient notice of their intent to file a wrongful death action. Here, approximately ninety days after the accident, the Chandradats filed a notice of claim with the State, Attorney General, INDOT, and Secretary of State, among others. The notice set forth that Ryan had been killed in the accident and that his parents had each been seriously injured. The caption of the claim reflected that the parents were suing individually and as "as mother and father of Ryan Chandradat, deceased." All of the required items of IC 34–13–3–10 were also included. We agree with the trial court that the Chandradats provided the State with sufficient information to reasonably afford the State an opportunity to promptly investigate the claim. The Chandradats notice was sufficient.

## V. Statutory Cap

██ Finally, the State contends that the trial court erred in denying summary judgment on the issue of whether to cap Mr. and Mrs. Chandradats' damages to $300,000 each, including any damages for the death of their son. At the time of the accident, IC 34–13–3–4 provided in pertinent part:

> The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment and not excluded from liability under section 3 [IC 34–13–3–3] of this chapter, does not exceed three hundred thousand dollars ($300,000) for injury to or death of one (1) person in

any one (1) occurrence and does not exceed five million dollars ($5,000,000) for injury to or death of all persons in that occurrence....

The trial court concluded that the issue of the applicability of the statutory cap should be determined after a jury verdict was rendered. We agree.

Our supreme court has recognized that IC 34–13–3–4, while limiting the amount of liability to which a governmental agency may be subject, does not prohibit a *verdict* in excess of $300,000. *Indiana State Highway Comm'n v. Morris,* 528 N.E.2d 468, 471 (Ind.1988). Citing to *State v. Bouras,* 423 N.E.2d 741 (Ind.Ct.App.1981), a case that analyzed the predecessor to IC 34–13–3–4, the supreme court held that "entry of judgment is the appropriate point at which the [liability cap] statute should be applied." *Id.* at 472. Because the application of the cap should be determined after the jury has rendered its verdict, it was not error for the trial court to deny the State summary judgment on this basis.

Finding, as we do, that the placement of the signage does not qualify the State for discretionary function immunity, that the State owed the Chandradats a duty, that there is a genuine issue of material fact as to whether the State's actions were a proximate cause of the Chandradats' injuries, that the Chandradats provided sufficient notice under the ITCA to file a claim for wrongful death, and that the question of the applicability of the ITCA cap on damages should be determined after the jury returns a verdict, we reverse the trial court's grant of summary judgment.

Reversed.

BAKER, J., and BARNES, J., concur.