**Deneen ARNOLD, Appellant–Plaintiff,**

**v.**

**F.J. HAB, INC., d/b/a Faces Night Club, Appellee–Defendant.**

No. 49A02–0004–CV–259.

Court of Appeals of Indiana.

April 12, 2001.

Joseph J. Reiswerg, Indianapolis, IN, Attorney for Appellant.

Edward F. Harney, Jr., Debra G. Richards, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Deneen Arnold, appeals the trial court's grant of summary judgment in favor of F.J. Hab, Inc., d/b/a Faces Night Club.

We affirm.

The following are the facts as viewed in the light most favorable to Deneen, the nonmoving party. On the evening of October 21, 1995, at approximately 11:00 p.m., Deneen, her sister, Darlene, and her sister's friend met at the Club. The Club is located on the east side of North Talbott Street, north of downtown Indianapolis. North Talbott Street is a two-lane street, running north and south, with a parking lane located on the east side of the street. Patrons of the Club can park in a lot located directly across the street from the nightclub, in the parking spaces along the east side of Talbott Street, or in a second parking lot located adjacent to and south of the first parking lot. The Club employs off-duty Indianapolis Police Department officers to work as security officers outside the Club, in efforts to deter fighting and vandalism. Officer Chester Gooch was employed as a security officer on October 21–22, 1995. Although Gooch was working at the Club at the time of the accident, he did not observe the accident because he had gone "[i]nside." Record at 87. Officer John Green also worked as a security officer at the Club; however, he was not on duty at the time of this incident.

Approximately one hour after she arrived, Darlene decided to leave the Club. Darlene's car was parked in the parking lot located directly across the street from the nightclub. However, when she reached her car she was unable to exit the lot because at some point after Darlene had arrived, Shati Golam had entered the same parking lot and parked her automobile so that it blocked the parking lot entrance/exit. Shati exited her vehicle and

entered the Club, leaving her passenger, Ghabrielle Strauss, in the car. Apparently, Ghabrielle decided to move the vehicle so that it no longer blocked the entrance/exit. While moving the vehicle, Ghabrielle lost control and crossed both lanes of traffic of Talbot Street. At approximately the same time, Deneen left the Club and exited the building onto the sidewalk in front of the Club when she heard someone yell "[r]un." Record at 151. The vehicle Ghabrielle was driving struck Deneen, the building, and a Jeep parked on the street in front of the building. As a result of the impact, Deneen sustained a broken hip, broken leg and ribs, and nerve damage to her bladder.

On January 10, 1997, Deneen filed a Complaint for Damages and Request for Jury Trial against F.J. Hab, Inc. d/b/a Faces Night Club in the Marion County Superior Court. On November 24, 1999, the Club filed a motion for summary judgment, a designation of evidence and a memorandum in support of its motion. The Club alleged that it did not owe a duty to protect Deneen from the runaway vehicle driven by Ghabrielle and that, even assuming such a duty, any breach of that duty was not the proximate cause of Deneen's injuries. On January 24, 2000, Deneen filed a response opposing the Club's motion and designating evidence to demonstrate the existence of material issues of fact. Deneen contended that the Club gratuitously assumed a duty to control traffic within the parking lot and that her injuries were foreseeable. The Club filed a reply memorandum on February 11, 2000, and on February 16, 2000, the trial court granted summary judgment in favor of the Club.

## I

### Standard of Review

In reviewing a motion for summary judgment, we stand in the shoes of

the trial court. *Ousley v. Board of Comm'rs of Fulton County*, 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied.* Summary judgment is appropriate only if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). Once the moving party sustains its initial burden, the opposing party may not rest upon the pleadings, but must identify the genuine issues and designate any pleadings, depositions, answers to interrogatories, admissions and any other evidentiary matters on which it relies to preclude entry of summary judgment. *Abbott v. Bates*, 670 N.E.2d 916, 921 (Ind.Ct.App.1996). Upon appeal, we will not weigh the evidence, but will consider the facts in the light most favorable to the nonmoving party and may sustain the judgment upon any theory supported by the designated evidence. *Collins v. J.A. House, Inc.*, 705 N.E.2d 568, 571 (Ind. Ct.App.1999), *trans. denied.*

Here, Deneen's claim is based upon a theory of negligence. To recover under the theory of negligence, Deneen must prove that the Club owed her a duty of care, which the Club breached, proximately causing her injuries. *Ousley*, 734 N.E.2d at 293. Thus, to prevail upon its motion for summary judgment, the Club must establish that the undisputed material facts negate at least one element of Deneen's claim or that her claim is barred by an affirmative defense. *City of Indianapolis Hous. Auth. v. Pippin*, 726 N.E.2d 341, 345 (Ind.Ct.App.2000). Deneen claims that, contrary to the Club's contentions, the undisputed facts show that the Club "assume[d] the duty of maintaining traffic control within the parking lot" and that the issue of proximate cause was a "question of fact for the trier of fact." Appellant's Brief at 8.

## II

### Assumed Duty

■ Deneen first argues that summary judgment was improper because the Club failed to negate the duty element of her negligence claim.[1] Specifically, Deneen contends that the designated evidence shows that the Club assumed a duty to provide traffic control within the parking lot located across the street from the Club. This court has held that:

[A] duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

*American Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532, 535 (Ind.Ct.App. 1999), *trans. denied* (quoting *Lather v. Berg*, 519 N.E.2d 755, 766 (Ind.Ct.App. 1988)). "[A]ssumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 388 (Ind.Ct.App.2000). While the existence and extent of such duty are ordinarily questions for the trier of fact, when there

---

1. The Club contends that summary judgment was proper because it did not assume a duty to protect Deneen from runaway vehicles. Appellee's Brief at 7. This is not the argument posed by Deneen. Rather, Deneen argues that the Club assumed a duty to control the traffic flow within the parking lot, and that the Club's failure to control the flow of traffic proximately caused her injuries. Appellant's Brief at 4.

exists no genuine issue of material fact, assumption of a duty may be determined as a matter of law. *American Legion,* 712 N.E.2d at 535; *Merchants,* 741 N.E.2d at 388.

In support of its motion, the Club designated a portion of the deposition testimony of John Green, a police officer who worked in his off-duty hours as a security officer for the Club. Green testified concerning his duties at the Club, stating that the function of security officers at the Club was "pretty much to be a uniformed presence, to be a deterrent, deal with any problems that they might have had in the club, such as fighting, a drunk person refusing to leave, monitoring the parking lot, make sure that [the cars in the parking lot] weren't stolen or broken in to [sic]." Record at 81. According to Green, "if a car was trying to get in the parking lot and there was a car chit-chatting with some passerbys, [sic] [I] would ask them to hurry, move along, say you are obstructing traffic in the street." Record at 82. Although Green stated that he "did not conduct any traffic control, per se," he did acknowledge that, in some respects, he controlled traffic inside the parking lot to keep it orderly. Record at 82. However, Green further stated that if he "[is] at another location ... in uniform ... in [his] marked police car" and witnesses an offense taking place, he has "the discretion to take action or not to take action." Record at 84. Green indicated that in such a situation, if traffic has been obstructed long enough, he will most likely take action. In addition, Green stated that patrons parked in the parking spaces on their own, that they were not directed into parking spaces within the lot, and that he had not directed a car into a parking space within the lot.

In response, Deneen designated a portion of her deposition. In response to a question concerning her understanding of the Club's parking lot procedures, Deneen stated that "you couldn't park inside the throughway of the parking lot, you could not block in either entranceway, and you couldn't block the open entry/exit of the parking lot...." Record at 146. Deneen also designated the deposition testimony of Chester Gooch, the off-duty police officer who was working as a security officer at the Club at the time of the incident. Gooch also testified concerning his activities while employed as a security officer for the Club. According to Gooch, he was hired for "[b]asically parking lot security" and the "types of things" he would do while working security would include:

> run[ning] people off if they was [sic] thrown out of the club or something, you know, like for being unruly, you know. If the security or bouncers would throw them out, we would make sure they just didn't hang around and cause problems. We would make sure cars wasn't [sic] just blocking up the street in front or something like that, making sure no one was unruly on the lot, that type of thing.

Record at 155–56. When asked whether he "maintain[ed] any type of car order on the lot itself, [made] sure that cars were parked properly and that sort of thing," Gooch responded that "[a]s long as they were parked within the line or whatever, we didn't have a problem with it." Record at 156. According to Gooch, he had been involved with traffic control within the parking lot and he understood it to be part of his duties as a security officer for the Club. Gooch indicated that his involvement included "advis[ing] people to move if they're like sitting in the aisles or whatever, blocking traffic." Record at 160. Finally, Gooch indicated that he experienced no traffic jams in the parking lot because he "[was] keeping order in the parking lot." Record at 161.

The designated evidence indicates that the Club's security officers had a policy of controlling, to some extent, the flow of traffic in the parking lot used by the Club's patrons. The designated evidence also reveals that, as a uniformed, off-duty police officer, Green believed he had the discretion to take action to disperse traffic jams, even in places where he was not working as a security officer. In addition, the designated evidence indicates that the level of parking lot control exercised by security officers Green and Gooch varied. Thus, a genuine issue of material fact exists as to whether the security officers' policy of providing some level of parking lot control rises to the level of a gratuitous assumption of a duty by the Club to control parking lot traffic, and the scope of any such duty. Accordingly, summary judgment was not appropriate upon the issue of gratuitous assumption of a duty.

### III

*Proximate Cause*

Assuming that the Club gratuitously assumed a duty to control parking lot traffic, and assuming that the Club breached its duty of reasonable care by failing to order the driver of a car which was blocking the parking lot entrance to move her vehicle, Deneen must still demonstrate that a reasonable trier of fact might appropriately find that her injuries were proximately caused by the Club's breach. Whether an act is the proximate cause of an injury, depends upon whether the injury was a natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. *Collins,* 705 N.E.2d at 573; *Ashcraft v. Northeast Sullivan County Sch. Corp.,* 706 N.E.2d 1101, 1105 (Ind.Ct.App. 1999). "[T]he negligent act must set in motion the chain of circumstances which contribute to or cause the resulting injury." *Collins,* 705 N.E.2d at 573. However, the chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury. *Id.* The key to determining whether an intervening agency has broken the original chain of causation is to decide whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury. *Id.* If the intervening cause was not reasonably foreseeable, the original negligent actor is relieved of any and all liability resulting from the original negligent act. *Id.* "The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified." *Straley v. Kimberly,* 687 N.E.2d 360, 364 (Ind.Ct. App.1997), *trans. denied.* "Although the issue of proximate cause is often determined by the trier of fact, where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law." *Collins,* 705 N.E.2d at 573.

In her response to the Club's motion for summary judgment, Deneen correctly contends that the "negligent party need not foresee the exact manner [in] which the harm occurs but must[,] in a general way, foresee the injurious consequences of his act or omission." Record at 134 (emphases omitted). However, we note that " '[t]he determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of men.' " *Ashcraft,* 706 N.E.2d at 1105 (quoting *Frye v. American*

*Painting Co.*, 642 N.E.2d 995, 998 (Ind.Ct. App.1994)).

Thus, while we acknowledge that the exact manner in which an injury occurs is not dispositive of whether the injury was foreseeable, we cannot agree with Deneen's contention that it was foreseeable that the injuries, which she sustained while present on the sidewalk located across a two-lane street from the parking lot, could occur "as a result of traffic within the parking area." Record at 134. It is clear to us that Deneen's injuries were caused when Ghabrielle Strauss, Shati Golam's passenger, decided to move the automobile, lost control of the automobile while doing so, and struck Deneen as she moved along the sidewalk located in front of the Club.[2] Ghabrielle's negligent driving could not have been reasonably anticipated by either the security officers or the Club. Accordingly, we do not agree with Deneen's contention that, in this case, the issue of proximate cause is "beyond the scope of appellate jurisdiction" and "falls to the trier of fact." Appellant's Reply Brief at 3. Rather, we find that "a jury could not reasonably come to a different conclusion as to the proximate and actual cause" of Deneen's

injury. *Ashcraft*, 706 N.E.2d at 1106. Like the plaintiff in *Ashcraft, supra,* Deneen has failed to show that the Club's alleged failure to control parking lot traffic could have served as a proximate cause of Deneen's injuries in light of Shati parking the car where she did and Ghabrielle negligently driving the vehicle across two lanes of traffic and into Deneen.[3] Accordingly, summary judgment was properly granted in favor of the Club upon the issue of proximate cause.

In the present case, even though genuine issues of material fact exist as to whether the Club gratuitously assumed a duty to control parking lot traffic and the scope of any such duty, there is no genuine issue of material fact concerning the foreseeability of Deneen's injuries under these circumstances, such that any breach of duty was not the proximate cause of her injuries.

The judgment is affirmed.

SHARPNACK, C.J., and MATHIAS, J., concur.

2. Although the mere intervention of an independent negligent act does not in and of itself relieve the original actor of legal responsibility, the intervening act will break the chain of liability if the intervention could not have been reasonably foreseen by the original negligent actor. *Lutheran Hosp. of Indiana, Inc. v. Blaser*, 634 N.E.2d 864, 871 (Ind.Ct.App. 1994).

3. We find the facts in *Ashcraft, supra,* to be similar and the reasoning of this court to be instructive in the present case. Ashcraft was a member of her high school cheerleading squad and was participating in a fundraising car wash in a local grocery store parking lot. The school's cheerleading coach was present at the fundraiser, "ostensibly to organize and supervise the event." *Ashcraft*, 706 N.E.2d at 1102. The store and its parking lot were located at the top of an incline. The cheerleaders were grouped at the bottom of the incline. While washing the rear windows of a car, Ashcraft saw a vehicle approaching her. The approaching vehicle was unattended and struck the car Ashcraft was washing, causing her injuries. In her suit against the school, Ashcraft alleged that the school failed to properly supervise and maintain the safety of the students during the fundraiser. In discussing the proximate cause of Ashcraft's injuries, this court noted that "Ashcraft [had] failed to make the causal link between [the cheerleading coach's] alleged negligence in not making signs or 'blocking off' an area and [the driver's] parking his car where he did, and its subsequent unexplained rolling into Ashcraft" which was the clear and undisputed "cause in fact" of Ashcraft's injury. *Id.* at 1106.