**M. Dee JONES and Kimberly D. Jones and Robert L. Hufty and Stacy L. Hufty, Appellants–Plaintiffs,**

**v.**

**Trent G. NICHOLS and Nichols Corporation, an Indiana corporation for profit, Appellees–Defendants.**

No. 03A05–0106–CV–254.

Court of Appeals of Indiana.

March 12, 2002.

C. Richard Marshall, Columbus, IN, Attorney for Appellants.

John A. Stroh, Sharpnack Bigley LLP, Columbus, IN, Attorney for Appellees.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellants-plaintiffs M. Dee Jones and Kimberly D. Jones ("the Joneses") and Robert L. Hufty and Stacy L. Hufty ("the Huftys") (collectively, "Appellants") appeal the trial court's grants of summary judgment in favor of appellees-defendants Trent G. Nichols and Nichols Corporation (collectively, "Nichols"). We affirm.

### Issues

Appellants raise four issues, which we consolidate and restate as the following two:

I. whether Nichols properly granted a pedestrian easement after the subdivision plat had been recorded; and

II. whether the pedestrian easement constitutes a residential purpose within the meaning of the subdivision's restrictive covenants.

### Facts and Procedural History[1]

On May 4, 1994, the Columbus Plan Commission ("the CPC") approved Nichols' request to subdivide 67.59 acres into 183 residential lots and one common "park" area subject to Nichols adding "mid-block pedestrian easements where required by ordinance for access to the park."[2] Nichols developed the Prairie Stream Estates subdivision ("Prairie Stream") in various sections and phases.

---

1. We heard oral argument in this case on February 5, 2002, in Indianapolis.

2. The Subdivision Control Ordinance of Columbus, Indiana, Section 16.24.150(D) provides that "[w]here blocks are over nine hundred feet in length a sidewalk in an easement not less than ten feet in width at or near the halfway point may be required if necessary, to provide proper access to schools, recreational areas, shopping centers, and other facilities."

After reviewing a plat of Prairie Stream in March 1997, the Joneses purchased lot 164 of Prairie Stream on March 31, 1997. The plat indicated a ten-foot-wide pedestrian and utility easement between neighboring lots 164 and 163 ("the side lot easement"). The side lot easement starts at the front of lots 164 and 163 and runs to the lots' rear property lines. The plat also showed a twenty-foot-wide utility easement between the rear of lot 164 and the rear of abutting lot 153.[3] Finally, as shown by the diagram below, the plat indicated a ten-foot-wide pedestrian and utility easement between neighboring lots 153 and 152.[4]

| pedestrian & utility easement | THE JONESES LOT 164 | LOT 163 |
|---|---|---|
| utility easement | | |
| "pedestrian easement" | | |
| LOT 152 | NICHOLS LOT 153 | THE HUFTYS LOT 154 |

During the summer of 1997, Nichols installed sidewalks on all of Prairie Stream's pedestrian easements. Nichols also installed a sidewalk on the utility easement running along the rear of lots 153 and 164 ("the connector sidewalk").[5] In July 1998, one year after Nichols installed the sidewalks, the Huftys purchased lot 154.

On October 14, 1998, Nichols recorded a fifteen-foot-wide pedestrian easement ("the pedestrian easement") located only along the rear of lot 153. The grant of the pedestrian easement reads in part, "Nichols hereby grants and establishes a fifteen (15) foot wide pedestrian easement for the foot traffic only (including the placement of a concrete sidewalk within the easement) by residents of Prairie Stream Estates...."

The Joneses filed a complaint against Nichols on June 4, 1998. On October 14, 1998, Nichols filed a motion for summary judgment. On December 17, 1998, while the summary judgment motion was pending, the Joneses filed an amended complaint alleging that the pedestrian easement was contrary to the platted utility easement; that the pedestrian foot traffic across the pedestrian easement constituted

---

**3.** The plat on which lot 164 is located was recorded on December 20, 1995, and the plat on which lot 153 is located was recorded on January 30, 1997.

**4.** This diagram is not to scale and is intended for illustration purposes only.

**5.** Initially, a portion of the connector sidewalk was located on the rear of lot 164. After the Joneses filed their complaint, Nichols removed that portion of the sidewalk and resodded the affected area.

a nuisance;[6] that the pedestrian easement was not being used for a residential purpose in violation of Prairie Stream's restrictive covenants; and that the side lot easement should be terminated because it would be without purpose after the termination of the pedestrian easement. The trial court granted Nichols' partial summary judgment on some of the issues raised in their original complaint on March 17, 1999.

On July 3, 2000, the Huftys filed a complaint containing allegations similar to those in the Joneses' amended complaint, and the trial court consolidated the cases on September 13, 2000. Nichols filed a motion for summary judgment[7] on the Huftys' complaint on January 26, 2001. The Huftys filed a motion for judgment on the pleadings and a cross-motion for summary judgment on February 2, 2001. The trial court granted Nichols' motion for summary judgment against the Huftys on May 8, 2001. On May 10, 2001, Nichols filed a motion for summary judgment on the Joneses' amended complaint. On May 21, 2001, the Joneses filed a cross-motion for summary judgment. The trial court entered judgment in favor of Nichols on their motion for summary judgment on June 8, 2001.

## Discussion and Decision

### Standard of Review

Summary judgment is only appropriate where the " 'designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 915 (Ind.Ct.App.2001) (quoting

Ind. Trial Rule 56(C)). "Once the moving party sustains its initial burden, the opposing party may not rest upon the pleadings, but must identify the genuine issues and designate any pleadings, depositions, answers to interrogatories, admissions and any other evidentiary matters on which it relies to preclude entry of summary judgment." *Id.*

■ On appeal, "we will not weigh the evidence, but will consider the facts in the light most favorable to the nonmoving party and may sustain the judgment upon any theory supported by the designated evidence." *Id.* "The fact that the parties [made] cross-motions for summary judgment does not alter our standard for review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Metal Working Lubricants Co. v. Indianapolis Water Co.*, 746 N.E.2d 352, 355 (Ind.Ct.App.2001).

### I. Granting of the Pedestrian Easement

Appellants contend that "[i]t is crucial to understand the legal significance of, and the absolute finality of, the recorded covenants and plats." Appellants' Br. at 15. Appellants argue without citation to authority that "[a] subdivision's recorded plat gives notice and communicates to the world its contents equally by both that which *is* affirmatively delineated and designated upon the plat (easements, roads, etc.) and that which *is not* seen upon the plat, i.e., an *absence* of a pedestrian easement across the rear of Lot 153." Appellants' Br. at 17.

---

6. Appellants do not appeal the trial court's grant of summary judgment in Nichols' favor on the nuisance issue.

7. We note that the parties inadvertently omitted from their appendices Nichols' brief in support of their motion for summary judgment against the Huftys. In the interest of judicial economy, we requested the brief directly from the trial court.

In support of their argument, Appellants rely primarily on *Wischmeyer v. Finch,* 231 Ind. 282, 107 N.E.2d 661 (1952). In *Wischmeyer,* our supreme court addressed the following issue:

> Can the owner of all the land in a subdivision, after a plat thereof containing building and property line restrictions has been approved by the Board of Public Works and recorded in the manner provided by statute, modify, change or eliminate such restrictions so as to relieve the lots described in such deed and the purchaser thereof from the provisions of such restrictions, by the execution of a deed to the first purchaser which makes no reference to such restrictions?

*See id.* at 283–84, 107 N.E.2d at 662.

The *Wischmeyer* court discussed two methods of creating restrictions on property. "One is by express covenants contained in the deed, and the other is by a recorded plat of the subdivision and a purchaser buys lots with reference to the plat." *Id.* at 288, 107 N.E.2d at 664. The *Wischmeyer* court noted that when land is conveyed according to a plat, that plat and its notes become part of the record. *See id.* Further, developers may freely modify restrictions contained in the plat until the first lot is sold; the sale of the first lot, however, "operates as a dedication of all the streets and alleys marked on such plat." *See id.* at 285, 107 N.E.2d at 663.

The *Wischmeyer* court also acknowledged that "the recording of a plat of a subdivision is notice to the world of the dedication of streets and alleys and of the restrictive covenants therein contained." [8] *Id.* at 286, 107 N.E.2d at 663. " 'The right of one owner of a lot to enforce restrictions upon other lots rests upon the ground that the restrictions were for the benefit of all the lots subject to the same restrictions.' " *Id.* at 289, 107 N.E.2d at 664 (citation omitted). The *Wischmeyer* court concluded that the statute governing the vacation of a restrictive covenant "applies with equal force to a modification." *Id.* at 288, 107 N.E.2d at 664; *see also* IND.CODE § 36–7–3–10 (addressing the vacation of plat by owners of land in a plat).

■ Appellants argue that under *Wischmeyer,* Nichols would have to vacate and re-plat Prairie Stream in order for the granting of the pedestrian easement to be effective and that to vacate the plat, Nichols would have to obtain from all of the Prairie Stream landowners a written declaration pronouncing all or part of the plat vacated, and then submit the declaration to the CPC for its approval.[9] *See* Appellants' Br. at 17. Essentially, Appellants argue that each time a landowner grants an ease-

---

8. Although reviewing a plat can put an individual on constructive notice of restrictive covenants contained therein, the plat is not the only way in which an individual may be put on notice. *See, e.g., Hartig v. Stratman,* 729 N.E.2d 237, 240–41 (Ind.Ct.App.2000) (recognizing that review of the chain of title puts one on constructive notice); *Highland v. Williams,* 166 Ind.App. 492, 495, 336 N.E.2d 846, 847 (1975) (concluding that a conversation about a restriction put appellant on actual notice).

9. Indiana Code Section 36–7–3–10 provides in relevant part,

> (a) The owners of land in a plat may vacate all or part of that plat. All the owners of land in the plat must declare the plat or part of the plat to be vacated in a written instrument, and that instrument must be executed, acknowledged, and recorded in the same manner as a deed to land.
>
> (b) Before offering the instrument for recording under this section, an owner must file a copy of the instrument in the county auditor's office and must submit the instrument vacating the plat for the approval of the plan commission that has jurisdiction over the platted area under IC 36–7–4.

ment across his or her land, that landowner must not only execute and record a deed, but he or she must also obtain the written consent of all other landowners in the plat and petition the local plan commission to vacate and re-plat the subdivision.

■ Nichols responds that the Joneses' reliance on *Wischmeyer* is misplaced because that case addressed the enforcement of restrictive covenants and not the granting of easements. *See* Appellees' Br. at 4–5. We agree. An easement "is essentially an inherently legal interest in land, as distinguished from a ... restrictive covenant, which is but a creature of equity arising out of contract. An easement implies an interest in the land, which is ordinarily created by a grant in a deed, and is often permanent." *Shiner v. Baita,* 710 So.2d 711, 712 (Fla.App.1998) (citations omitted).[10]

The *Wischmeyer* court acknowledged that " '[t]he right of one owner of a lot to enforce restrictions upon other lots rests upon the ground that the restrictions were for the benefit of all the lots subject to the same restrictions' " *Wischmeyer,* 231 Ind. at 289, 107 N.E.2d at 664 (citation omitted), but it did not indicate that landowners may sue to prevent fellow landowners from granting easements. Further, while Appellants' lots are subject to Prairie Stream's restrictive covenants, they are not subject to the burden that the pedestrian easement imposes on lot 153; thus, their reliance on *Wischmeyer* on the issue of the pedestrian easement is misplaced.

■ In summary, while a landowner must execute and record a deed in his or her chain of title to ensure that subsequent purchasers of that property are aware of the easement and the burden that it imposes,[11] he or she need not also obtain the written consent of all other landowners in the plat and petition the local plan commission to vacate and re-plat the subdivision in order to grant the easement. Therefore, the trial court properly granted summary judgment in favor of Nichols on this issue.

## II. Residential Purpose

■ Appellants also argue that even if Nichols' granting of the pedestrian easement was proper, the connector sidewalk along the rear of lot 153 violates Prairie Stream's restrictive covenants, which provide in part that "[n]o lot shall be used for anything except residential purposes." Appellants summarize several Indiana cases addressing restrictive covenants containing residential purpose limitations. *See, e.g., Stewart v. Jackson,* 635 N.E.2d 186, 193 (Ind.Ct.App.1994) (concluding that an unlicensed day care center is a residential purpose), *trans. denied; Adult Group Properties, Ltd. v. Imler,* 505 N.E.2d 459, 463 (Ind.Ct.App.1987) (distinguishing commercial and business purposes from residential purposes and determining that commercial nature of facility for developmentally disabled individuals was not a residential purpose), *trans. denied; Austin v. Durbin,* 160 Ind.App. 180, 186–87, 310 N.E.2d 893, 897 (1974) (concluding that

**10.** *See also* Black's Law Dictionary 527 (7th ed.1999) (defining an easement in relevant part as "[a]n interest in land owned by another person, consisting of the right to use or control the land, or an area above or below it, for a specific limited purpose"); *id.* at 371, 336 N.E.2d 846 (defining a restrictive covenant as "[a] private agreement, usu. in a deed or lease, that restricts the use or occupancy of

real property, esp. by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put").

**11.** *See e.g., Hartig,* 729 N.E.2d at 240 (concluding that easement recorded outside chain of title is insufficient to put subsequent purchaser on constructive notice of existence of easement).

fifty-foot roadway for vehicular use across a lot to a camp was not a residential purpose).

Appellants also point to *Bagko Dev. Co. v. Damitz*, 640 N.E.2d 67 (Ind.Ct.App. 1994), in which we noted that the record contained no evidence that a lot used as a little league practice field had been used for business or commercial purposes and concluded that the field was a proper residential purpose.[12] *Id.* at 71. Although the trial court here relied on *Bagko* in granting Nichols' motion for summary judgment, Appellants contend that this reliance was misplaced because

> [l]ogic and common sense tell us that a developer-lot owner, which has no intent to become a "resident," simply cannot have a residential-purpose motive or mind-set behind granting a 15′ pedestrian easement across the rear of its lot in October, 1998 *after* installing a 75′ length concrete sidewalk thereupon in mid–1997. [Nichols'] commercial and business purposes and motives behind the grant of easement are unequivocally seen in [Nichols'] affidavit filed with the trial court.... Obviously the reasons behind the post-platting easement is [*sic*] that [Nichols] is interested only in belatedly complying with the city ordinance in an effort to avoid consequences (if any) to it and/or in an effort to keep the city planning officials "happy."

Appellants' Br. at 23.

Nichols' status as a developer and motivation for granting the pedestrian easement are irrelevant. Instead, we focus on the purpose for which the pedestrian easement is used, and as the granting language indicates, the pedestrian easement is to be used for Prairie Stream residents' "foot traffic only." Appellants do not assert, nor does the record indicate, that the sidewalk is being used for commercial or business purposes. Thus, a sidewalk for the foot traffic of Prairie Stream residents clearly constitutes a residential purpose within the meaning of the restrictive covenants, and the trial court properly granted summary judgment in Nichols' favor on the Huftys' complaint and on paragraph four of the Joneses' amended complaint.[13]

Affirmed.

RILEY, J., concurs.

MATHIAS, J., concurs with opinion.

MATHIAS, Judge, concurring.

I write in concurrence to emphasize the unique facts of this case and to point out that our holding makes it essential for prospective purchasers of real estate to protect themselves by not only investigating the chain of title to the parcel they plan to purchase, but also to satisfy themselves that any restrictive covenants that are a part of their chain of title adequately protect them as owners in future years.

One of the hallmarks of modern life is the growing size and complexity of residential subdivisions. These subdivisions are developed with an ever-increasing number of common improvements pursuant to plats that subdivide the real estate

---

**12.** Appellants urge us to read *Bagko* narrowly by suggesting that the *Bagko* court approved the use of the field only by the family and friends of the landowner. *See* Appellants' Br. at 24. The *Bagko* court addressed this issue, however, in the context of a zoning violation, not as a violation of a restrictive covenant. *See Bagko*, 640 N.E.2d at 71–72. Thus, the *Bagko* court's analysis of this issue is inapplicable. Absent a restrictive covenant so limiting the use of the lots in Prairie Stream, we need not further address this argument.

**13.** Given our resolution of these dispositive issues, we need not address Appellants' argument that the side lot easement should be terminated because it is without purpose.

into smaller and smaller parcels containing larger and larger homes. Friction between neighbors that could be tolerated on parcels of two-thirds acre or more becomes intolerable when parcel size is reduced to one-fourth acre and less.

Understandably, developers want to retain control over their developments for long periods of time in order to assure their commercial success through the continued sale of parcels and construction of homes that preferably increase, but at least maintain, the value of the previously constructed homes in the subdivision. The method used to retain this control is the imposition of uniform restrictive covenants on platted parcels. While such restrictive covenants generally benefit original and subsequent purchasers by clearly defining owner responsibilities and rights, the duration of developer control of any homeowners association and/or architectural control committee created by the restrictive covenants is at least as important as the responsibilities and rights specifically defined or omitted in those covenants.

Here, appellants clearly knew that the common sidewalk to the park at the back of the development was platted to run along the side of their lot in a ten-foot easement shared with their neighboring lot. The plat also disclosed that a similar easement began again at the back of their lot, but on the opposite side from, and parallel to the pedestrian easement they shared with their neighbor. Somehow, the easements had to be joined to accomplish the underlying purpose of providing pedestrian access to the park which was a common improvement for the benefit of all residents. Whether appellants consciously took the risk involved or just were oblivious to it is not a part of our record.

In the restrictive covenants of some developments, creation of easements by individual homeowners is prohibited without prior approval of the architectural control committee or a majority of other homeowners. There is no such limitation contained in the restrictive covenants at issue. More importantly, such a prohibition would have been to no avail here because these restrictive covenants allow the developer to retain control of the architectural control committee for as long as the developer desires. In addition, under these (and most) restrictive covenants, the developer retains greater rights regarding the parcels that remain unsold to private individuals than any homeowner has regarding his/her own lot. There simply was no way for the appellants to prevent the construction of the connecting sidewalk under the unique facts and circumstances at issue.

I strongly agree that appellants' reliance on *Wischmeyer* is misplaced. The *Wischmeyer* court was called upon to consider the effect of mistaken conveyance without reference to restrictive covenants, not an omission from a plat which was logically suggested, and not the common law of easements. In addition, there is a good argument to be made that the "holding" of the *Wischmeyer* court concerning the absent restrictive covenants is really *dicta*, in that the court refused to allow interested subsequent homeowners to enforce the covenants under the doctrine of laches.

I very much dislike the "all or nothing" remedy the law requires regarding something as important as one's enjoyment of one's home. But I must regretfully concur in what the law requires under these facts and circumstances.